Gorman, J.
 

 Although there is nothing in the record to so indicate, we assume from the statements contained in the briefs of both counsel that the law of Ohio is to govern the construction of the terms of the policy..
 

 Briefly, we are to consider whether the death of one caused by amebic dysentery, contracted from drinking water infected by the breaking of a sewer pipe, is the result of a bodily injury sustained by accidental means.
 

 There is little to guide us in the decided cases of this state with reference to the construction of an insurance policy of this.nature. Primarily we are to determine the line of demarcation between an accidental injury and a disease.
 

 In a review of the cases we note that many of them seem to make distinctions between that which is accidental and that which is not. New of them discuss just what is to be considered a bodily injury under the terms of policies similarly worded.
 

 Generally an accident is considered as an event proceeding from an unexpected happening or unknown cause without design, and not in the usual course of things.
 
 United, States Mutual Accident Assn.
 
 v.
 
 Barry,
 
 131 U. S., 100, 33 L. Ed., 60, 9 S. Ct., 765;
 
 Western Commercial Travelers’ Assn.
 
 v.
 
 Smith,
 
 85 F., 401;
 
 Aetna Life Ins. Co.
 
 v.
 
 Vandecar,
 
 86 F., 282, 285;
 
 Aetna Life Ins. Co.
 
 v.
 
 Brand,
 
 265 F., 6;
 
 Mutual Life Ins. Co. of N. Y.
 
 v.
 
 Dodge,
 
 11 F. (2d), 486;
 
 Continental Casualty Co.
 
 v.
 
 Willis,
 
 28 F. (2d), 707;
 
 Burkhard
 
 v,
 
 Trav
 
 
 *225
 

 ellers’ Ins. Co.,
 
 102 Pa., 262, at page 268, 48 Am. Rep., 205 ; 61 A. L. R., 1072; 5 Couch on Insurance, 3963, Section 1137.
 

 As early as 1861, Lord Cockburn in the case of
 
 Sinclair, Admx.,
 
 v.
 
 Maritime Passenger’s Assurance Co.,
 
 3 Ellis & Ellis, 478, 485, 121 Eng. Rep., 521, 524, made this interesting observation:
 

 “It is difficult to define the term ‘accident,’ as used in a policy of this nature, so as to draw with perfect accuracy a boundary line between injury or death from accident, and injury or death from natural causes; such as shall be of universal application. At the same time we think we may safely assume that, in the term ‘accident’ as so used, some violence, casualty, or
 
 vis major,
 
 is necessarily involved. We cannot think disease produced by the action of a known cause can be considered as accidental. Thus disease or death engendered by exposure to heat, cold, damp, the vicissitudes of climate, or atmospheric influences, cannot, we think, properly be said to' be accidental; unless at all events, the exposure is itself brought about by circumstances which may give it the character of accident. Thus (by way of illustration), if, from the effects of ordinary exposure to the elements, such as is common in the course of navigation, a mariner should catch cold and die, such death would not be accidental; although if, being obliged by shipwreck or other disasters to quit the ship and take to the sea in an open boat, he remained expose'd to wet and cold for some time, and death ensued therefrom, the death might properly be held to be the result of accident. It is true that, in one sense, disease or death through the direct effect of a known natural cause, such as we have referred to, may be said to be accidental, inasmuch as it is uncertain beforehand whether the effect will ensue in any particular case.. Exposed to the same malaria or infection, one man escapes, another succumbs. Yet diseases thus
 
 *226
 
 arising have always been considered, not as accidental, bnt as proceeding from natural causes.”
 

 It will be noticed that Lord Cockburn said some violence, casualty, or
 
 vis major
 
 was essential to an accident. In this country our courts have likewise attempted
 
 to
 
 draw a distinction between injuries due to accidental external means and accidental results. The element of accident must be found to exist in the means or cause which produced the bodily injury rather than in the result. See
 
 Landress
 
 v.
 
 Phoenix Mutual Life Ins. Co.,
 
 291 U. S., 491, 78 L. Ed., 934, 54. S. Ct., 461;
 
 Sentinel Life Ins. Co.
 
 v.
 
 Blackmer,
 
 77 F. (2d), 347, 349;
 
 Metropolitan Life Ins. Co. of America
 
 v.
 
 Bukaty,
 
 92 F. (2d), 1;
 
 Mansbacher
 
 v.
 
 Prudential Life Ins. Co.,
 
 154 Misc. (N. Y.), 796, 278 N. Y. Supp., 225;
 
 Hatch
 
 v.
 
 United States Casualty Co.,
 
 197 Mass., 101, 83 N. E., 398, 125 Am. St. Rep., 332, 14 L. R. A. (N. S.), 503.
 

 At least one judge has said quite forcefully that such distinctions “will plunge this branch of the law into a Serbonian Bog,” and at least one court has taken that position. See Cardozo, J., in
 
 Landress
 
 v.
 
 Phoenix Mutual Life Ins. Co., supra,
 
 499;
 
 Bukata
 
 v.
 
 Metropolitan Life Ins. Co.,
 
 145 Kan., 858, 67 P. (2d), 607. Our own court recognized the futility of setting forth a definite rule applicable in each case when former Chief Justice Nichols pointed out in
 
 New Amsterdam Casualty Co.
 
 v.
 
 Johnson, Admx.,
 
 91 Ohio St., 155, 160, 110 N. E., 475, L. R. A. 1916B, 1018, that “the separation of injuries, occasioned by accidental meáns from those occasioned by means non-accidental, is not free from difficulty, and an attempt to logically analyze every supposable case of this character and differentiate along consectary lines would lead to some contradictions.”
 

 Tested by the general rules of interpretation if one would drink from a stream which had been polluted for some length of time and thereby contract a disease,
 
 *227
 
 that'would not be an accident. If, on the other hand, the stream had been clear prior to the time he stopped to quench his thirst, but shortly before a sewer pipe had broken and infected the water with disease germs which he drank, ■ an accident would have intervened.. True, the accidental force did not operate directly upon the one drinking, but the breaking of the pipe was unexpected and unforseen and did not happen in the usual course of things. ' It would not be so remote as not to be considered an accident so far as the consumer of the water is concerned.
 

 In the instant case the breaking of the pipe was accidental. When Burns drew the water from the faucet he expected it to be pure. But for the breaking of the sewer pipe and the subsequent infecting of the water cooling system, it is to be presumed that it would have been. The amebae infected the water by an accident, and consequently it was likewise accidental that they entered the system of Burns. We have no difficulty in holding that Burns’ death was due to amebic dysentery which was accidentally contracted, as the term is commonly used in everyday speech.
 

 But was the contraction of amebic dysentery a bodily injury covered by this particular policy? There was no violence,
 
 vis major,
 
 or other, casualty which operated directly upon Burns.
 

 Under our Workmen’s Compensation Law an injury to be compensable must be not only accidental, but traumatic as well.
 
 Industrial Commission
 
 v.
 
 Cross,
 
 104 Ohio St., 561, 136 N. E., 283;
 
 Renkel
 
 v.
 
 Industrial Commission,
 
 109 Ohio St., 152, 141 N. E., 834;
 
 Industrial Commission
 
 v.
 
 Russell,
 
 111 Ohio St., 692, 146 N. E., 305;
 
 Industrial Commission
 
 v.
 
 Middleton,
 
 126 Ohio St., 212, 184 N. E., 85;
 
 Industrial Commission
 
 v.
 
 Armacost,
 
 129 Ohio St., 176, 194
 
 N.
 
 E., 23.
 

 However, it must be pointed out that our Constitution (Article II, Section 35) makes a specific distinction between injuries and disease which our courts
 
 *228
 
 early recognized. See
 
 Industrial Commission
 
 v.
 
 Brown,
 
 92 Ohio St., 309, 110 N. E., 744, L. R. A. 1916B, 1277;
 
 Industrial Commission
 
 v.
 
 Roth,
 
 98 Ohio St., 34, 120 N. E., 172, 6 A. L. R., 1463;
 
 Industrial Commission
 
 v.
 
 Cross, supra; Industrial Commission
 
 v.
 
 Franken,
 
 126 Ohio St., 299, 185 N. E., 199. Reference to such cases cannot he determinative of the issue presented to us in this case.
 

 Many courts have held that where death or disability has been due to the mechanical action of food or drink there has been a result produced by accidental means. Oases of ptomaine poisoning, alcoholic poisoning, infections of the eye by gonococci germs, blood poisoning, and carbon monoxide poisoning have been held to come within the terms of policies with provisions somewhat similar to the one before us.
 
 Miller
 
 v.
 
 Fidelity & Casualty Co.,
 
 97 F., 836;
 
 Zurich General Accident & Liability Ins. Co.
 
 v.
 
 Flickinger,
 
 33 F. (2d), 853;
 
 Lincoln National Life Ins. Co.
 
 v.
 
 Erickson,
 
 42 F. (2d), 997;
 
 Washington Fidelity National Ins. Co.,
 
 v.
 
 Anderson,
 
 187 Ark., 974;
 
 Moore
 
 v.
 
 Fidelity & Casualty Co.,
 
 203 Cal., 465, 265 P., 207, 56 A. L. R., 860;
 
 Healey
 
 v.
 
 Mutual Accident Assn.,
 
 133 Ill., 556, 25 N. E., 52, 23 Am. St. Rep., 637, 9 L. R. A., 371;
 
 United States Casualty Co.
 
 v.
 
 Griffis,
 
 186 Ind., 126, 114 N. E., 83, L. R. A. 1917F, 481;
 
 Republic Life & Accident Co.
 
 v.
 
 Hatcher,
 
 244 Ky., 574, 51 S. W. (2d), 922;
 
 Brown
 
 v.
 
 Continental Casualty Co.,
 
 161 La., 229, 108 So., 464;
 
 Hood & Sons
 
 v.
 
 Maryland Casualty Co.,
 
 206 Mass., 223, 92 N. E., 329, 138 Am. St. Rep., 379, 30 L. R. A. (N. S.), 1192;
 
 Johnson
 
 v.
 
 Fidelity & Casualty Co.,
 
 184 Mich., 406, 151 N. W., 593, L. R. A. 1916A, 475;
 
 Spicer
 
 v.
 
 Benefit Assn.,
 
 142 Ore., 574, 17 P. (2d), 1107;
 
 Hahn
 
 v.
 
 Home Life Ins. Co.,
 
 169 Tenn., 232, 84 S. W. (2d), 361;
 
 McFarland
 
 v.
 
 Massachusetts Bonding & Ins. Co.,
 
 157 Tenn., 254, 8 S. W. (2d), 369, 64 A. L. R., 962;
 
 Newsoms
 
 v.
 
 Commercial Casualty Ins. Co.,
 
 147 Va., 471,
 
 *229
 
 137 S. E., 456, 52 A. L. R., 363;
 
 McNally
 
 v.
 
 Maryland Casualty Co.,
 
 162 Wash., 321.
 

 In other cases, some depending upon the particular facts, recovery for similar ailments has been denied.
 
 Dozier
 
 v.
 
 Fidelity & Casualty Co.,
 
 46 F., 446;
 
 Westmoreland
 
 v.
 
 Preferred Accident Ins. Co.,
 
 75 F., 244;
 
 Herdic
 
 v.
 
 Maryland Casualty Co.,
 
 146 F., 386;
 
 Carnes
 
 v.
 
 Iowa State Traveling Men’s Assn.,
 
 106 Ia., 281, 76 N. W., 683, 68 Am. St. Rep., 306;
 
 Calkins
 
 v.
 
 National Travelers Benefit Assn.,
 
 200 Ia., 60, 204 N. W., 406, 41 A. L. R., 363;
 
 Naggy
 
 v.
 
 Provident Life & Accident Ins. Co.,
 
 218 Ia., 694, 255 N. W., 526;
 
 Smith
 
 v.
 
 Travelers Ins. Co.,
 
 219 Mass., 147, 106 N. E., 607, L. R. A. 1915B, 872;
 
 Maryland Casualty Co.
 
 v.
 
 Hudgins,
 
 97 Tex., 124, 76 S. W., 745, 104 Am. St. Rep., 857.
 

 Death by typhoid fever has been held to be due to an injury,
 
 Aetna Life Ins. Co.
 
 v.
 
 Portland Gas & Coke Co.,
 
 229 F., 552,
 
 Christ
 
 v.
 
 Pacific Mutual Life Ins. Co.,
 
 312 Ill., 525, 144 N. E., 161, 35 A. L. R., 730, although in one case recovery was denied because of a specific exclusion of disease in the policy.
 
 Chase
 
 v.
 
 Business Men’s Assurance Co. of America,
 
 51 F. (2d), 34. Likewise death from drinking milk of cows which had eaten golden rod was held compensable under an accident policy.
 
 Buel
 
 v.
 
 Kansas City Life Ins. Co.,
 
 32 N. M., 34, 250 P., 635, 52 A. L. R., 367.
 

 All of these cases proceeded upon the theory that the policy must be construed most strongly against the insurer whose duty it was to specifically exclude the risks if there was doubt.
 

 Some of the courts in construing these policies have failed to distinguish two important factors. First, they have proceeded upon the theory that the language of the policy must be construed most strongly against the insurer.
 
 J Manufacturers Accident Indemnity Co.
 
 v.
 
 Dorgan,
 
 58 F., 945, 956.
 

 However, if there is no ambiguity in the policy, there is no occasion to resort to the rule. Undoubtedly the
 
 *230
 
 insured is entitled to a liberal construction, but not to such a construction as would include matters which were never conceivably intended to be covered by the parties.
 

 We feel that the true rule of construction was set forth in
 
 New Amsterdam Casualty Co.
 
 v.
 
 Johnson, Admx.,
 
 91 Ohio St., 155, 157, 110 N. E., 475, L. R. A. 1916B, 1018:
 

 “In construing the language of an insurance policy it has been universally and properly held that the words of limitation should be most favorably construed in behalf of the insured and against the company.
 

 “This does not mean, however, that a strained, unnatural and forced meaning should be given words or phrases, but rather the everyday meaning which must have been plainly in the minds of the contracting parties.”
 

 Certainly, a disease such as pneumonia or typhoid fever is not thought of in everyday language as a bodily injury. As said by Judge Cardozo in
 
 Connelly v. Hunt Furniture Co.,
 
 240 N. Y., 83, 85, 147 N. E., 366, 39 A. L. R., 867.
 

 “We attempt no scientifically exact discrimination between accident and disease' or between disease and injury. None perhaps is possible, for the two concepts are not always exclusive, the one of the other, but often overlap. * * * Germs may indeed be inhaled through the nose or mouth, or absorbed into the system through normal channels of entry. In such cases their inroads will seldom, if ever, be assignable to a determinate or single act, identified in space or time
 
 (Matter of Jeffreyes
 
 v.
 
 Sager Co.,
 
 198 App. Div., 446, 233 N. Y., 535). For this as well as for the reason that the absorption is incidental to a bodily process both natural and normal, their action presents itself to the mind as a disease and not an accident.”
 

 Yet to uphold the contention of appellee would com
 
 *231
 
 pel us to say that if the disease was' due to any mishap recovery may be had, but not otherwise. Logically this would lead to the conclusion that all diseases are bodily injuries. There would be no difference between an accident policy and a health policy, except insofar as it would be necessary to trace the cause, in the former to some mischance.
 

 The second error is that courts have failed to distinguish the types of insurance coverage. Prior to the enactment of the various Workmen’s Compensation Acts, employers carried insurance for bodily injuries to their employees. The real basis of the peril insured against was liability for torts. Accordingly recoveries were permitted where there was an infection through negligence, causing glanders and typhoid fever. See
 
 Hood & Sons
 
 v.
 
 Maryland, supra; Aetna Ins. Co.
 
 v.
 
 Portland Gas & Coke Co., supra.
 
 These decisions followed the result reached in
 
 Brintons, Ltd.,
 
 v.
 
 Turvey
 
 (1905), A. C., 230.
 

 That case did not attempt to overrule
 
 Sinclair
 
 v.
 
 Maritime Passenger’s Assurance Co., supra,
 
 which was an action on a personal accident policy. In such a policy, as was so well said by Lord Cockburn, the idea of external violence, even if not expressly mentioned is the basis of the risk, and not tort. See comment in 24 Harvard Law Review, 221, 223.
 

 The Illinois court in the case of
 
 Christ
 
 v.
 
 Pacific Mutual Life Ins. Co., supra,
 
 relied almost entirely in support of its decision on the
 
 Hood case
 
 and the
 
 Portland Gas & Coke Co. case
 
 without recognizing that recovery was permitted in those instances primarily because employers’, policies to cover injuries to employees were involved.
 

 Yet in the
 
 Hood case,
 
 because of the type of insurance coverage, Judge Morton gave an extremely liberal interpretation to the language of the policy. At page 226 he said:
 

 “The language is ‘bodily injuries accidently suf
 
 *232
 
 fered.’ It hardly could be broader. The intention is, as has been said to afford full protection and indemnity . to the assured. Any accident that causes bodily injury in any way is included. Bodily injury is more commonly associated perhaps with physical force of some sort, but in the absence of anything in the policy limiting it to that we do not see how or why it can or should be so restricted.”
 

 In the case before us, the intention was not to give full indemnity. It was not a general health policy, but a limited accident policy, and the premium collected was for a limited coverage. Therefore, under the above mentioned rule of construction, bodily injury is and should be, in ¡this type of case, considered as limited to bodily injuries resulting from physical or external forces known as accidents.
 

 In this case Burns died of amebic dysentery. That is produced by a small parasite of from 15 to 80 microns in diameter. It is a single celled parasite, and the only type of amebae pathogenic to man. Generally, when in the body, it produces pathological lesions in the intestines, other organs and tissues. There is still considerable difference of opinion as to just how the lesions are produced. Dr. Charles F. Craig in his work “Amebiasis and Amebic Dysentery” (1934) says at page 71:
 

 “Thus, Dobell and O’Connor (1921) believe that the lesions are caused by a cytolysin secreted by the amebae; Wenyon (1926) by a combined cytolytic action on the tissues and the penetration of the tissues by the amebae; Rees (1929), by cytolysis of the surface layer of the mucosa; Hegner, Johnson and Stabler (1932), by either cystolysis or mechanical penetration; while Ratcliff (1932) believes that direct mechanical penetration of the tissues by the amebae is the usual mechanism, aided by cytolysis of the tissues.”
 

 At any rate these small one cellular parasites produce a degeneration of the tissues that, in some cases,
 
 *233
 
 results in death. All diseases produce a somewhat similar degeneration, and to include all diseases as bodily injuries seems to ignore the common meaning of the words.
 

 Although the cause was'decided because of a specific exclusion in the policy, the language of Judge Phillips in
 
 Chase
 
 v.
 
 Business Men’s Assurance Co., supra,
 
 at page 36, seems pertinent:
 

 “In the ordinary sense of the words, we do not regard the contracting of an infectious disease, through the normal consumption of food, air or water infested with bacilli which causes such disease, as the suffering of bodily injuries from accidental means. We regard it, rather as the contracting of a disease. In their ordinary and popular sense, the phrase ‘bodily injuries’ conveys the idea of a cut, a bruise or a wound rather than a physical'impairment caused by disease.”
 

 The same distinction was aptly made by Judge Peckham in
 
 Bacon
 
 v.
 
 United States Mutual Accident Assn.,
 
 123 N. Y., 304, 9 L. R. A., 617, 20 Am. St. Rep., 748, wherein recovery was denied one who died from the effects of a malignant pustule contracted by coming in contact with putrid or diseased animal matter.
 

 Pneumonia, typhoid fever, scarlet fever and the like, are diseases due solely to germs. To call them bodily injuries is to establish a new nomenclature and classification not generally used in ordinary conversation.
 

 The words “bodily injury” are commonly and ordinarily used to designate an injury caused by external violence, and they are not used to indicate disease. "We do not speak of sickness as an accident or an injury. When we hear that someone has suffered an accident, we conclude that he has suffered, more or less, some external violent bodily injury. Since the words “bodily injury” are used in the policy in their common and accepted meaning, it is only by a strained and illogical construction of the words that they can be held to include a disease not resulting from some external vio
 
 *234
 
 lenee. We do not think of one suffering from typhoid fever as being bedridden as the result of an accident or injury.
 

 In order to create liability under a policy insuring against bodily injuries caused directly, solely and independently of all other causes by accidental means, there must be evidence of some external or violent and accidental force or cause.
 

 The pleadings and opening statement of counsel, when taken as true, do not entitle plaintiff to recover.
 

 For the reasons stated the judgment of the Court of Appeals is reversed, and that of the Court of Common Pleas affirmed.
 

 Judgment reversed.
 

 Weygandt, C. J., Matthias, Day and Zimmerman, JJ., concur.
 

 Williams and Myers, JJ., dissent.