Weygandt, C. J.
The basis of this controversy is the following controlling language of the policy:
“Mutual Benefit Health and Accident Association, Omaha (herein called association) hereby insures Carl Watson Hammer (herein called the insured) of city of Logan, state of Ohio, against loss of life, limb, sight *395 or time, sustained or commencing while this policy is in force, resulting directly and independently of all other causes, from bodily injuries sustained while this policy is in force, through purely accidental means # * «
Í ( # * #
“If the insured shall sustain bodily injuries, as described in the insuring clause, which injuries shall, independently and exclusively of disease and all other causes, continuously and wholly disable the insured from the date of the accident and result in any of the following specific losses within thirteen weeks, the association will pay for loss of:
“Life ...................... principal sum.”
The defendant has interposed 37 assignments of error. However, the gravamen of its contention is, first, that the death of the insured on July 8, 1949, did not result from “bodily injuries,” second, that any such injuries were not sustained “through purely accidental means,” and, third, that, if the insured did suffer bodily injury through purely accidental means, the death did not result from such injury “directly and independently of all other causes.”
Most of the pertinent facts are not in dispute. On the day of his death the insured was approximately thirty-five years of age. He and another man employed by a roofing company were engaged in shingling the roof of a house in Greenfield, Ohio. The weather is described as “very hot,” “mighty hot” and “so hot we couldn’t hardly get our breath.” In the middle of the afternoon both men left the roof and rested in the shade about a half hour. Then each picked up a bundle of shingles weighing approximately 70 pounds. The men started up the ladder with the decedent in the lead. The latter threw his bundle on the roof and asked his associate whether he needed help. On receiving an answer in the negative, the decedent stepped *396 from the ladder to the roof. It was necessary to place the shingles higher on the roof. The decedent attempted to accomplish this, bnt as he did so he suddenly collapsed and fell on his bundle of shingles. He died within a few minutes.
In his report the county coroner certified that the “disease or condition directly leading to death” was “acute coronary occlusion,” and that the antecedent cause was “heat exhaustion.” Later the coroner signed an affidavit stating that he found no injury and that the cause of death was heat exhaustion and acute coronary occlusion.
In response to special interrogatories the jury found (1) that the death of the decedent resulted from bodily injuries, (2) that such bodily injuries resulted in death independently and exclusively of disease and all other causes, (3) that such bodily injuries resulted through purely accidental means, (4) that decedent’s death was not caused solely by coronary occlusion, (5) that coronary occlusion contributed to the death of the decedent, and (6) that heat exhaustion contributed to the death of the decedent.
It is the contention of the defendant that there was no evidence warranting a submission of the case to the jury on the questions of physical injury or accidental means or sole causation.
However, a careful study of the record discloses evidence which required the trial court to overrule the defendant’s motion for a directed verdict.
The following is illustrative of the evidence on the question of physical injury:
“Q. Any kind of injury to any part of the body come as a result of heat exhaustion? A. The organs have an injury from heat exhaustion. The plugging up of the vessels — that will cause thrombi in the organs. I don’t quite get what you mean.
“Q. That’s exactly what I mean. So that as a *397 matter of fact, the physical injury or the plugging up of the vessel is the direct result of the heat exhaustion? A. That’s right.”
The question whether heat exhaustion or sunstroke may constitute accidental means is, counsel agree, one of first impression in this state. The general rule is summarized as follows in 29 American Jurisprudence, 759, Section 1004:
“It is held by the weight of authority that a sunstroke, suffered by one unexpectedly, is within the protection of an accident insurance policy insuring against bodily injuries sustained through external, violent, and accidental means. In accordance with this view, it has been held that death from a sunstroke suffered while the insured is engaged in his ordinary duties or occupation is a risk covered by the policy, and that it is unnecessary, in order to warrant a recovery, that the exposure to the sun should be the result of an accident.”
To the same effect is the following statement in 22 Ohio Jurisprudence, 666, Section 570:
“A sunstroke, according to the apparently better reasoned authorities, if suffered unexpectedly, is within an accident policy insuring against bodily injuries sustained through accidental means or by accident.”
To the same effect are annotations in 17 A. L. R., 1197; 61 A. L. R., 1197; and 90 A. L. R., 1387.
The Court of Appeals made the following pertinent comment in its opinion:
“It is true as contended by counsel for the defendant that the insured voluntarily exposed himself to the sun on the day of his death. He was at the time pursuing his work in the ordinary way unmindful of any danger from the heat of the sun as attested by the record. Even though he was in the sun voluntarily, this self exposure can not be regarded as ‘the means’ of his injury. It can not be said that the heat exhaus *398 tion or sunstroke was one following in the usual or expected way. On the contrary while the insured was so voluntarily exposed, the sudden prostration or sunstroke occurred and it is not the usual happening under such circumstances in the common experience of men; but contained very forcibly and violently the elements of something unforeseen, unexpected and out of the ordinary course.
“Sunstroke or heat exhaustion caused by the sun’s rays, happening under the circumstances found in this case, surely is an accident. And as has many times been said as clearly so as is a lightning stroke. It happened to the insured without any human agency, was sudden, unexpected and unusual and was caused by the sun’s rays and has all the elements of an accident both in its occurrence and result.
“Our examination of the various cases herein cited and contained in the annotations referred to demonstrate that there is a distinction between a case where the means producing the injury was the act of the insured and a case where the means of producing the injury was not the act of the insured, but was the action of an extraneous or outside force.
“Many of these cases disclose that various courts have sometimes overlooked this distinction, treating the act of the insured as the means producing the sunstroke or heat exhaustion, apparently oblivious to the fact that the means producing the. sunstroke or heat exhaustion was the action of an extraneous physical force, a force operating from without, the heat or rays of the sun.”
Hence, there was ample basis for the specific finding of the jury that the bodily injuries resulted through accidental means.
The defendant relies on the decisions of this court in the cases of New Amsterdam Casualty Co. v. Johnson, Admx., 91 Ohio St., 155, 110 N. E., 475, L. R. A. *399 1916B, 1018; Burns v. Employers’ Liability Assurance Corp., Ltd., 134 Ohio St., 222, 16 N. E. (2d), 316, 117 A. L. R., 733; and Mitchell v. New York Life Ins. Co., 136 Ohio St., 551, 27 N. E. (2d), 243. Each is distinguishable from the instant case on the particular facts. In the Johnson case the insured died from a heart attack following a voluntary cold bath, and in the opinion it is observed that the insured planned for and deliberately entered on the project and it was carried out precisely as intended. The water was no colder than he wanted it to be. In the Burns case death resulted from amebic dysentery contracted from drinking water which had been infected by the breaking of a sewer pipe in a hotel. Recovery was denied on the ground that dysentery is a disease and not an injury. In the Mitchell case the insured died as a result of a rupture caused by administering to himself an enema in the intended manner by voluntarily connecting the rubber tube to the faucet in a bath tub. In the opinion appears the comment that there was no evidence showing an unexpected change and increase in the water pressure or that the decedent did not exercise control over the flow of water which caused his injury.
On the question of sole causation, some of the evidence is as follows:
“Q. In other words, the conclusion would be here that if, as the plaintiff claimed and if as the death certificate shows, death was due to coronary occlusion, then we would be pretty put to say that over-exertion caused this man’s death, wouldn’t we? Wouldn’t we? A. The heat — heat was the factor that caused this man’s death.
“Q. Heat was a factor? A. It was the whole factor —the whole factor.
“Q. You wouldn’t attempt to say to this jury that heat exhaustion alone caused this man’s death? A. I would because from the history and knowing what *400 I do of coronary disease, the age it comes on and everything, and the circumstances under which he had to work and everything, a person could come to no other conclusion but what it was heat exhaustion. ’ ’
In view of these emphatic statements, it hardly can be said that there is no evidence of sole causation.
A study of the further assignments discloses no prejudicial error, and the judgments of the lower courts must be affirmed.

Judgment affirmed.

Zimmerman, Middleton and Hart, JJ., concur.
Stewart, Taft and Matthias, JJ., dissent.