GARRIGAN, APPELLEE, *v.* THE FIDELITY & CASUALTY CO. OF NEW YORK, APPELLANT.

(No. 5743—Decided May 18, 1966.)

*Messrs. Harris, Sacks, Subrin & Goldman,* for appellee.
*Messrs. Endress & Endress,* for appellant.

HUNSICKER, J. An appeal on questions of law is brought to this court by The Fidelity and Casualty Company of New York from a judgment rendered against it on the verdict of a jury by the Common Pleas Court of Summit County, Ohio. That judgment was in the sum of $2,387.50 and, in effect, determined the right of the appellee, Edgar L. Garrigan, to receive a continuing, weekly award from the appellant, casualty company, arising out of an accident-disability contract of insurance it entered into with the appellee, Garrigan, on June 12, 1928, and renewed each year by the payment of premiums, until the occurrence detailed herein.

This policy of insurance provided, among other things, that:

"The Fidelity and Casualty Company of New York does hereby insure the person named in statement A of the Schedule of Warranties [Edgar L. Garrigan] against—

"Bodily injury sustained * * * through accidental means and resulting directly, independently and exclusively of all other causes, in—

"(a) Total disability that immediately and continuously prevents the Assured [Edgar L. Garrigan] from performing each and every duty pertaining to his occupation."

On December 21, 1963, Mr. Garrigan fell while on his way to work, striking his back, shoulders, and the back of his head on the pavement. Thereafter he experienced a blurring of the vision in his right eye. After an examination by a competent doctor, it was determined that he had a detached retina, and he was operated on for this condition on January 15, 1964, and on March 25, 1964. Prior to the fall on the pavement, he had, in 1961 or 1962, lost the vision of his left eye as a result of glaucoma. He suffered from the same disease in his right eye.

Mr. Garrigan recovered some vision in his right eye, drives an automobile to some extent (when accompanied by his wife), reads magazines and newspapers, and watches television. These activities are limited, however, for he is not able to engage in reading, watching television, or writing, for any length of time. He cannot write distinctly because he cannot see where he is writing; although he can, for a limited time, write some figures and words. His work was that of a bookkeeper in an insurance

agency. He never again engaged in such work after January 7, 1964.

The eye doctor who treated Mr. Garrigan said that, in his opinion, the fall experienced by him, "directly, independently and exclusively" of all other causes, precipitated the detachment of the retina; and that for the balance of his life, he could not follow the occupation of bookkeeper. The doctor also said the glaucoma did not contribute in any way to the detachment of the retina. The fall was the sole cause of the first detachment of the retina, and not cystic degeneration.

The doctor's written report, made to the appellant on May 12, 1964, seemed to indicate that cystic degeneration was a contributing cause of the detached retina. This report was accepted by the appellant, casualty company, which did not thereafter talk with the doctor, or have an independent examination made of Mr. Garrigan. At the trial, they said they were taken by surprise when that doctor-witness gave testimony which seemed to contradict this letter. The defense then requested time to secure the testimony of the doctor who performed the second operation for a detached retina, or for another doctor to testify after an examination of Mr. Garrigan. The trial court granted a continuance from the afternoon session until 1:15 p. m., the next day, but the appellant, casualty company, said this was not sufficient time to permit the appearance of that doctor, or of another doctor to examine Mr. Garrigan, and then testify. The doctor-witness said his letter should have read "detachments," and not the singular of that word; thus meaning that as to the cause of the second retina detachment, there was some cystic degeneration.

In this court, the appellant, casualty company, says the trial court erred in failing to (1) direct a verdict at the close of the case for Garrigan; (2) grant judgment for the appellant, casualty company, notwithstanding the verdict; (3) grant a motion for a "new trial based upon the surprising and unforeseeable change of testimony committed by plaintiff's [Garrigan's] physician."

As to the claim that a new trial should have been granted because of surprise, it must be reiterated that the appellant, casualty company, never consulted an independent medical doctor; never had Garrigan examined by a doctor of its choice;

and never discussed with Garrigan's physician the report he sent to it, and to Garrigan, concerning his findings. Although the continuance granted by the trial court was only from the close of court one day until after lunch the next day, there was an opportunity to secure a local doctor to examine Mr. Garrigan, even though the out-of-town doctor, who performed the second operation, was not available, or could not come to Akron from Columbus, Ohio, where he resides.

Under the circumstances herein, we conclude that the trial court did not commit an abuse of discretion, nor err to the prejudice of the appellant, casualty company, when it refused to continue for a greater length of time the trial that was then in progress.

The chief problem herein concerns the question of Garrigan's right to recover under the terms of this policy for the loss of sight of the right eye that prevented him from pursuing his occupation.

Mr. Garrigan is entitled to recover if the disability which he has resulted from bodily injury sustained through accidental means "directly, independently and exclusively" of all other causes.

It is the contention of the appellant, casualty company, that since Mr. Garrigan had lost the vision in one eye, even though he continued to work, a loss of vision in the other eye, through a cause within the policy provisions, could never give rise to a claim for total disability under the policy. It insists that a man sees by means of two eyes, and since Mr. Garrigan's loss of vision in one eye was due to disease, no matter what happened to the other eye, there could never be a recovery under the policy, even though the loss of vision in one eye did not prevent him from working regularly until he suffered the trauma that caused the loss of vision in the remaining good eye.

There is no evidence in this case to show that the loss of vision in the right eye resulted from any cause other than the fall suffered by Mr. Garrigan on December 21, 1963, even though he suffered from a disease in that eye known as glaucoma.

We recognize the import and force of *Burns v. Employers' Liability Assurance Corp., Ltd., of London, England*, 134 Ohio St. 222; *Aetna Life Ins. Co. v. Dorney, an Infant*, 68 Ohio St. 151; and *Posey v. Old Equity Life Ins. Co.*, 119 Ohio App. 495,

But we do not have those situations here. This is not a case where the evidence is in conflict. From the record before us, this court (if it were assigned as error) could not say the judgment is against the manifest weight of the evidence. The problem here is: may an employed man with vision in but one eye, who loses that vision by the means set out in a casualty policy, and hence is totally unable to pursue his usual occupation, recover on that casualty policy?

There is no claim of fraud in obtaining the policy, or in keeping it in force from the date of acquisition—June 12, 1928.

We have in Ohio the generally-accepted rule of liberal construction of insurance contracts in favor of an insured. 30 Ohio Jurisprudence 2d 225, Insurance, Section 215, and authorities there cited. The appellant, casualty company, chose the language for this contract; and if it wished to provide for the contingency that where one of two bodily functions is destroyed by disease, a loss of the other, within the terms of the policy, does not give rise to a recovery, it was their privilege to do so. It did not say it in this contract of insurance.

The disease, in the instant case, had no causal connection with the disability suffered by Mr. Garrigan, and the accident was the sole cause of his inability to continue his occupation. Under Section 3923.011, Revised Code, there is total disability herein in compliance with that statutory definition. See, also, 30 Ohio Jurisprudence 2d, Insurance, Section 663 *et seq.*, and authorities there cited.

Counsel have not cited, and we have not found, any case with a similar factual situation. In that respect, this case seems to be one of first impression.

We conclude herein that: where one is insured under a casualty insurance contract for total disability and, solely because of trauma, a loss of vision results to one eye, vision in the other eye having been lost by reason of disease, the loss of vision to the remaining eye may properly be found to have been sustained "directly, independently and exclusively," of all other causes.

The judgment herein must be affirmed.

*Judgment affirmed.*

DOYLE, P. J., and BRENNEMAN, J., concur.