JOURNAL ENTRY and OPINION
Appellants Vicki Dunn and Jacci Mancini appeal from the trial court's denial of their motion to reconsider summary judgment granted in favor of Miami Insurance Company (Miami), providers of business liability insurance for North Star Resources, Inc. (North Star) and its president Joyce McLean. In granting summary judgment the court declared Miami had no obligation to indemnify North Star or McLean for injuries allegedly caused to Dunn and Mancini by fellow North Star employee, Al Bucco's sexual harassment. Dunn and Mancini assign the following as error for our review:
 THE TRIAL COURT ERRED IN GRANTING THE SUMMARY JUDGMENT MOTION OF MIAMI INSURANCE AND DENYING THE SUMMARY JUDGMENT MOTION OF PLAINTIFFS ON INSURANCE COVERAGE.
Having reviewed the record and pertinent law, we affirm the judgment of the trial court. The apposite facts follow.
Dunn and Mancini, former North Star employees, complained against North Star, McLean individually and as North Star's president, and Bucco alleging multiple causes of action including hostile work environment sexual harassment, sexual discrimination, and negligence.[1] The complaint stemmed from alleged sexually offensive conduct of Bucco during the time of Dunn and Mancini's employment with North Star.
On February 25, 1999 Dunn and Mancini filed an amended complaint seeking a declaratory judgment as to whether insurance policy language obligated Grange or Miami to indemnify North Star and McLean. Dunn and Mancini, Grange, and Miami filed motions for summary judgment on the declaratory judgment issue. The trial court denied Dunn and Mancini's motion and, on December 7, 1999, granted Grange's and Miami's motions, determining the insurance companies are not liable to indemnify North Star and McLean in this matter because the claims do not fall within the scope of applicable policy coverages.
On January 25, 2000, Dunn and Mancini filed a motion to reconsider the grant of summary judgment in favor of Miami. Notably absent from the motion is any contention that the trial court erred in granting summary judgment in favor of Grange.
On March 29, 2000, the trial court denied the motion to reconsider, finding Dunn and Mancini did not suffer bodily injury as defined in the Miami policy. The trial court entered summary judgment in favor of Miami on that basis.
Having lost both insurance company defendants, on March 22, 2001, Dunn and Mancini entered a consent agreement with North Star and McLean whereby they would dismiss their suit in exchange for $600,000. One notable term of the settlement provides that if North Star and McLean paid $20,000 to Dunn and Mancini within fourteen days of settlement, they would release North Star and McLean, and only pursue the settlement balance of $580,000 from the insurance companies. On March 23, 2001, the trial court journalized this consent agreement and issued a final order dismissing the matter as to all parties.
Because this appeal stems from Dunn and Mancini's motion to reconsider, which only questioned the trial court's grant of summary judgment in favor of Miami, this appeal does not raise the propriety of summary judgment in favor of Grange.
In determining whether the trial court properly denied Dunn and Mancini's motion to reconsider summary judgment, we apply a de novo standard of review.[2] Accordingly, we afford no deference to the trial court's decision and independently review the record in the light most favorable to the nonmovant to determine whether summary judgment is appropriate.[3]
Under Civ.R. 56, summary judgment is appropriate when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can only reach one conclusion which is adverse to the nonmoving party.[4]
Civ.R. 56 places upon the moving party the initial burden of setting forth specific facts that demonstrate no issue of material fact exists and the moving party is entitled to judgment as a matter of law.[5] If the movant fails to meet this burden, summary judgment is not appropriate.[6] If the movant does meet this burden, summary judgment will only be appropriate if the nonmovant fails to establish the existence of a genuine issue of material fact.[7]
It is axiomatic that an insurer holds no duty to its insured for events falling outside the bounds of policy coverage.[8] Thus, the query before us is whether an insurable event occurred. Our resolution depends upon policy language applicable to the present facts.
The Miami policy provides:
A. COVERAGES
1. Business Liability
 a. We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury, * * * to which this insurance applies. * * *.
b. This insurance applies:
(1) To bodily injury * * * only if:
 (a) The bodily injury * * * is caused by an occurrence * * *.
* * *
B. EXCLUSIONS
 1. Applicable to Business Liability Coverage — This insurance does not apply to:
 a. Expected or Intended Injury Bodily injury or property damage expected or intended from the standpoint of the insured. * * *.
* * *
F. LIABILITY AND MEDICAL EXPENSES DEFINITIONS
* * *
 3. Bodily Injury means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
* * *
 12. Occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful condition.
Under the policy coverages, Miami is obligated to indemnify North Star only if North Star (1) is legally obligated to pay damages, (2) because of bodily injury, (3) stemming from an occurrence. We consider these prerequisites in the preceding order.
On the topic of workplace sexual harassment committed by a coworker, the Ohio Supreme Court held:
 [W]here a plaintiff brings a claim against an employer predicated upon allegations of workplace sexual harassment by a company employee, and where there is evidence in the record suggesting that the employee has a past history of sexually harassing behavior about which the employer knew or should have known, summary judgment may not be granted in favor of the employer, even where the employee's actions in no way further or promote the employer's business. An employer has a duty to provide its employees with a safe work environment and, thus, may be independently liable for failing to take corrective action against an employee who poses a threat of harm to fellow employees, even where the employee's actions do not serve or advance the employer's business goals. Whether the employer has acted appropriately in a particular situation is a factual matter to be determined on a case by case basis. However, where an employer knows or has reason to know that one of his employees is sexually harassing other employees, he may not sit idly by and do nothing. The appropriate response, which may range in severity from a verbal warning, to a transfer, to a temporary suspension, to a firing, will depend on the facts of the particular case, including the frequency and severity of the employee's actions.[9]
Here, the record indicates various employees informed their supervisors Bucco openly committed sexually offensive acts in the office. Thus, North Star knew of its employee's sexually harassing behavior, and may be liable for the harm caused by Bucco's conduct, satisfying the first prerequisite.
Even if North Star could be legally obligated to pay damages, Miami is not obligated to provide indemnification unless Dunn and Mancini suffered bodily injury. Dunn and Mancini allegedly suffered, and continue to suffer: pain, anxiety, and physical distress; emotional distress, shame and anguish; * * *. Further, the affidavits filed by Dunn and Mancini alleged they suffered physical bodily injury as a result of Al Bucco and the Defendants in this case. Specifically, each stated they became physically sick, vomited, experienced severe nausea, dizziness, and terrible headaches. Dunn stated she is a diabetic and the defendant's actions affected her blood-sugar levels and caused her physical sickness. Mancini stated Al Bucco touched me on several occasions in such a manner that he physically left bruises on my body.
In Dickens v. General Accident Insurance,[10] we determined nausea, stomach pains, headaches, anxiety, mental torment, body pain and other adverse health effects did not lead to coverage under an insurance policy indemnifying against bodily injury defined as bodily injury, sickness or disease sustained by a person. Specifically, we held:
 The provision in the policy * * * where coverage is offered for bodily injuries does not cover the type of physical symptoms stemming from the emotional distress caused by a wrongful discharge.[11]
In reaching this conclusion, we relied upon Tomlinson v. Skolnik[12]
in which the Ohio Supreme Court held, The words `bodily injury' are commonly and ordinarily used to designate an injury caused by external violence * * *.[13]
Although the causes of action differ between Dickens and the case at hand, their respective facts are indistinguishable as they relate to the fundamental question of whether physical manifestations of emotional distress amount to bodily injury when defined as bodily injury, sickness or disease. Accordingly, we follow Dickens and determine Dunn and Mancini were required to demonstrate actual physical injury stemming from external violence.
Although Dunn's affidavit states she suffered physical bodily injury, she failed to allege a bodily injury covered by Miami. Sickness, vomiting, nausea, dizziness, and headaches may be covered bodily injuries if caused by external force, but nowhere in the record did Dunn satisfy this requirement. Consequently, no genuine issue of material fact exists as to whether Miami is obligated to indemnify North Star in relation to Dunn's complaint. Miami is entitled to summary judgment as a matter of law, and reasonable minds can only come to a conclusion adverse to Dunn. Accordingly, the trial court did not err by denying Dunn and Mancini's motion to reconsider summary judgment as it pertains to Dunn.
Mancini's affidavit is similar to Dunn's, with one notable exception: Mancini states she suffered bruises at the hands of Bucco. As these bruises arguably stem from external force, Mancini has alleged a bodily injury for which North Star may be legally liable. Thus, barring a specific exclusion, Miami would be obligated to indemnify North Star if the bodily injury stemmed from an occurrence.
We recall the Miami policy defines occurrence as an accident. Because the policy does not define accident, we apply its ordinary and commonly accepted meaning.[14] Thus, we consider an accident, and by logical extension an occurrence, as an unexpected or undesigned event out of the usual course.[15] Our law is well-settled that insurance policies such as Miami's insure against accidental harm rather than accidental conduct. In Physicians Insurance Co. v. Swanson,[16] a boy insured under his father's homeowner's policy fired a BB gun in the general direction of teenagers, striking one of them in the eye. The evidence adduced at trial demonstrated the boy intended to shoot the BB gun and to scare the teenagers by hitting a sign near their table; but he did not intend to hit the teenagers or cause them any harm. Coverage under the insurance policy at issue was triggered by an occurrence defined as an accident. Under these facts, the court found coverage existed because the boy accidentally caused harm. The court explained:
 First, the plain language of the policy is in terms of an intentional or expected injury, not an intentional or expected act. Were we to allow the argument that only an intentional act is required, we would in effect be rewriting the policy. Second, * * * many injuries result from intentional acts, although the injuries themselves are wholly unintentional.[17]
In Gearing v. Nationwide Ins. Co.,[18] the supreme court held intent to harm can be properly inferred as a matter of law from deliberate acts of sexual molestation of a minor.[19] The court provided the following reasoning:
 [A]cts of sexual molestation and the fact of injury caused thereby are virtually inseparable in that, in a case of child molestation, to do the act is necessarily to do the harm which is its consequence; and since unquestionably the act is intended, so is the harm.[20]
The court further observed:
 Indeed, in Swanson we approved of the premise that resulting injury which ensues from the volitional act of an insured is still an `accident' within the meaning of an insurance policy if the insured does not specifically intend to cause the resulting harm or is not substantially certain that such harm will occur.[21]
Thus, from Swanson and Gearing we understand that the relevant inquiry in determining whether a insurable accident occurred is whether the actor intended or reasonably expected to cause the harm precipitated by his conduct, regardless of whether the conduct itself was intentional.
This court applied this proposition in State Farm Casualty Co. v. Boyson[22] where a man entered a bar and intentionally shot his estranged wife as well as a bystander who was in the line of fire. Again, the insurance policy in question defined an occurrence as an accident. Citing Swanson and Gearing, we stated, Even if we accept the argument that [the shooter's] wife was his only intended target, his intent to injure [the bystander] can reasonably be inferred under the circumstances. * * *. Because the injury resulted from [the shooter's] intentional act of firing a gun under circumstances where injury was substantially certain to occur, the injury to [the bystander] cannot reasonably be considered an accident.[23]
We again follow Swanson and Gearing and hold no coverage can exist under Miami's policy if Bucco intended to harm Mancini or was reasonably certain he would cause her injury by his intentional conduct.
The sole insurable harm at issue here is the bruises suffered by Mancini. We view this specific harm in the general context of Bucco's behavior to determine his intent to cause Mancini harm. Amongst other derogatory conduct, Bucco displayed pornographic images at his desk and on his computer, played sexually explicit recordings, directed sexually vulgar comments towards Mancini, and referred to Mancini and other women in the office as bitches, broads, and piggies. This conduct, in concert with purposefully touching Mancini, demonstrates an utter disregard for Mancini's well-being. In the context of such contemptuous behavior, we determine the evidence clearly demonstrates Bucco intended to harm Mancini or was substantially certain harm would result from his conduct. Thus, the harm caused Mancini by Bucco was not accidental, and no genuine issue of material fact exists as to whether Miami is obligated to indemnify North Star in relation to Mancini's complaint. Miami is entitled to summary judgment as a matter of law, and reasonable minds can only come to a conclusion adverse to Mancini. Accordingly, the trial court did not err by granting summary judgment in favor of Miami.
Having determined no coverage exists by virtue of express policy coverage, we need not address whether policy exclusions apply. Nonetheless, we note the expected or intended injury exclusion present in Miami's policy would obviate coverage even if we determined Bucco's conduct amounted to an occurrence. The exclusion applies to injuries expected or intended by the insured, North Star.[24] As nothing in our record demonstrates North Star expected or intended Mancini's injuries, the exclusion would be applicable here.
For the foregoing reasons, Dunn and Mancini's assigned error is without merit.
Judgment affirmed.
It is ordered that appellees recover from appellant their costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TERRENCE O'DONNELL, J., CONCUR; FRANK D. CELEBREZZE, JR., J., CONCURS IN JUDGMENT ONLY.
[1] The complaint also stated causes of action for common law sex discrimination, public policy tort, and gross negligence.
[2] Baiko v. Mays (2000), 140 Ohio App.3d 1, 746 N.E.2d 618.
[3] Id.
[4] Holliman v. Allstate Ins. Co., 86 Ohio St.3d 414, 1999-Ohio-116,715 N.E.2d 532; Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327, 364 N.E.2d 267.
[5] Dresher v. Burt, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107,662 N.E.2d 264.
[6] Id. at 293.
[7] Id.
[8] See Gearing v. Nationwide Ins. Co., 76 Ohio St.3d 64,1996-Ohio-113, 665 N.E.2d 1115.
[9] Kerans v. Porter Paint Co. (1991), 61 Ohio St.3d 486, 492-493,575 N.E.2d 428.
[10] (1997), 119 Ohio App.3d 551, 695 N.E.2d 1168.
[11] Id. at 554.
[12] (1989), 44 Ohio St.3d 11, 540 N.E.2d 716.
[13] Id. at 14, quoting Burns v. Employer's Liability Assurance Corp. Ltd. (1938), 134 Ohio St. 222, 223, 16 N.E.2d 316.
[14] Bobier v. National Casualty Co. (1944), 143 Ohio St. 215,54 N.E.2d 798, paragraph one of the syllabus; Nationwide Mutual Fire Ins. Co. v. Turner, 1986 Ohio App. LEXIS 9988 (Apr. 15, 1986), Cuyahoga App. No. 50278.
[15] See, State Farm Casualty Co. v. Boyson, 2000 Ohio App. LEXIS 3021 (July 6, 2000), Cuyahoga App. No. 76194, quoting Aguiar v. Tallman, 1999 Ohio App. LEXIS 985 (Mar. 15, 1999), Mahoning App. No. 97 CA 116.
[16] (1991), 58 Ohio St.3d 189, 569 N.E.2d 906.
[17] (Emphasis sic.) Id. at 193.
[18] 76 Ohio St.3d 34, 1999-Ohio-113, 665 N.E.2d 1115.
[19] Id. at 37.
[20] Id. (citations omitted).
[21] (Emphasis sic.) Id. at 39-40. (citations omitted).
[22] 2000 Ohio App. LEXIS 3021 (July 6, 2000), Cuyahoga App. No. 76194.
[23] Id. at 13-14.
[24] See Boyson, supra at 19-20.