Felix C. Benvenga, J.
In this action to recover double indemnity benefits under two policies of life insurance, defendant moved to dismiss the complaint and for a directed verdict. No proof was offered by defendant. The testimony of the medical witnesses called by plaintiff stands uncontradicted. A question of law is involved.
In June, 1955 the insured underwent an operation for an inflamed condition of the gall bladder, resulting in the removal of the gall bladder. The operation was completed without complications. Subsequently, the insured developed “ unusual ” symptoms. X-rays were taken. Within six days after the operation, a laparotomy was performed. It was found that a part of the small intestine had adhered to the gall bladder bed, forming a mechanical obstruction. This condition was not present at the .time of the first operation. The laparotomy resulted in the separation of the adhesions and the removal of the obstruction. Within a week, acute renal insufficiency developed as a consequence of the intestinal obstruction, causing uremia and death. Defendant insurer has paid the face amount of the policies. The sole question is whether plaintiff, the bene *182 ficiary under the policies, is entitled to double indemnity. The policies provide, in substance, that double indemnity shall be payable upon proof that the insured died “as a direct result of bodily injury effected solely through external, violent and accidental means, independently and exclusively of all other causes ”, provided that double indemnity shall not be payable “ if death resulted * * * directly or indirectly from disease or bodily or mental infirmity.”
In this State, no distinction is made between accidental death and death by accidental means; nor between accidental means and accidental results. If death is accidental or due to an accident, as these terms are commonly used and understood by the average man, the beneficiary is entitled to double indemnity (Mansbacher v. Prudential Ins. Co., 273 N. Y. 140, 144-145; Bennett v. Equitable Life Assur. Soc., 13 N. Y. S. 2d 540, affd. 261 App. Div. 819; Preferred Acc. Ins. Co. v. Clark, 144 F. 2d 165, 167-168; Pope v. Prudential Ins. Co., 29 F. 2d 185, 186, 187; Rapp v. Metropolitan Acc. & Health Ins. Co., 143 Neb. 144, 148-149, 151). ‘ ‘ This test — the one that is applied in the common speech of men — is also the test to be applied by courts ” (Lewis v. Ocean Acc. & Guar. Gorp., 224 N. Y. 18, 21, per Cardozo, J.). ‘ ‘ When a man has died in such a way that his death is spoken of as an accident, he has died because of an accident, and hence by accidental means. So courts of high authority have held. * * * So the holder of this policy might reasonably assume ” (Landress v. Phoenix Ins. Co., 291 U. S. 491, 499-501, dissenting opinion per Cardozo, J.) —which, clearly, is the law of this State.
In applying this test to the instant case, it is to be noted that, about a year before the gall bladder operation, the insured had undergone an operation for an enlarged prostate gland, as the result of which he developed a paralytic ileum, a functional obstruction, from which he almost died. Then, following the gall bladder operation, the insured developed adhesions resulting in a mechanical obstruction, from which he did die.
It would seem that, as the symptoms and effects of a mechanical obstruction are similar to those of a functional obstruction, which had resulted from the prostate operation, and as a functional obstruction is more common than a mechanical obstruction, the doctors (some of the most eminent in their field and all friends and associates of the insured) understandably erred in their early diagnosis. But for such mistaken diagnosis, the insured (according to the testimony) would have been operated upon sooner, “ and he might have been alive today.”
Be that as it may, it is to be borne in mind that the insured was a man of 65 who had had two major abdominal operations *183 within the space of about a year. Admittedly, in all operations, even those of a minor nature, there are certain operative risks.
‘‘ Anything can happen after an abdominal operation.” The risks, however, are greater in a major operation; again, the older the person, the greater the risk. One of the risks of a gall bladder operation is the occurrence of adhesions and the possibility of an intestinal obstruction. It may be that mechanical obstructions as distinguished from functional obstructions are comparatively rare; nevertheless, the occurrence of such an obstruction, according to the medical testimony, is a recognized operative risk.
To be sure, the medical witnesses, in answer to leading questions, testified that death was unforeseen, unanticipated and unexpected; nevertheless, they frankly admitted that the insured had died of “ post-operative complications.” Whether they would say that death was due to an accident is, to say the least, doubtful. In any event, the test is whether the average man would speak of the insured’s death as having been caused by an accident.
Of course, each case depends upon its own facts, and the facts differ in every case (see Mansbacher v. Prudential Ins. Co., 273 N. Y. 140, supra). But in principle, the case at bar would seem to. be indistinguishable from the Bennett, Clark, Pope and Rapp cases (supra).
Thus, in the Bennett case (13 N. Y. S. 2d 540, affd. 261 App. Div. 819, supra) the insured, according to the record on appeal, was a man of 55. He was operated upon for a right inguinal hernia. Eleven days later, he became ill and died as a result of post-operative pulmonary embolism. In holding that the insured’s death did not occur in consequence of “ bodily injury effected solely through external, violent and accidental means ”, the Appellate Term (Frankenthaler, Shientag and Noonan, JJ.), distinguished Mansbacher (273 N. Y. 140, supra) and some of the other cases relied upon by plaintiff herein, as 1 ‘ not here controlling, as in those cases the causes were trivial and were followed by some unforeseen, unexpected, extraordinary, and unlooked-for mishap. Here, however, death ensued as the result of post-operative pulmonary embolism. In such event, the cause was neither trivial nor the result unforeseen.”
In the Clark case (144 F. 2d 165, supra), the insured, a man of 62, was taken to a hospital suffering from a gall bladder condition and other ailments. He submitted to a major operation in the upper abdominal cavity. The following day he died from a pulmonary collapse. In holding that the pulmonary collapse resulting in death was not an accident under New York *184 law, the Circuit Court of Appeals followed the Bennett decision, saying (pp. 168-169): “ We can see no distinction between a case where death results from embolism caused by a major operation and one where death is caused from a massive lung collapse caused by a major operation. Both were eventualities which rarely, but sometimes, flow from major abdominal operations. * * * Excluding those eases where the condition of the patient is desperate and an operation is resorted to with the hope of possibly saving his life, we know that death does not ordinarily result from a major abdominal operation. Yet we also know that death does result from complications arising after major abdominal operations in a limited number of cases, and that, while the patient does not expect death, he knows it is a possible eventuality. * * * We do not think that the ordinary man, under the attending facts and circumstances, * * * would regard the death as accidental.”
Here, as in the Bennett and Clark cases, death resulted from post-operative complications following an abdominal operation; in the Bennett case, from a pulmonary embolism following a hernia operation; in the Clark case, from massive lung collapse following a gall bladder operation; in the instant case, from intestinal obstruction following a gall bladder operation. The conditions which resulted in death in all of these cases were eventualities which rarely, but sometimes, flow from abdominal operations. Nor was death in any of these cases foreseen, anticipated or expected. Yet it is inconceivable that the average man would regard death in any of these cases as due to an accident.
Assuming, therefore, that death in the instant case did not result directly or indirectly from disease or bodily infirmity, here, as in the Bennett and other cases, death, as a matter of law, cannot be said to have been due to an accident.
The motion to dismiss the complaint is, therefore, granted and judgment is directed for the defendant.