J. Irwin- Shapiro, J.
Plaintiff appeals from a judgment in favor of defendant rendered after trial without a jury in an action to recover under a double indemnity provision of a policy issued by defendant upon the life of plaintiff’s husband which provided that the sum of $5,000 would be payable if the death of the insured “ resulted, directly and independently of all other causes, from bodily injuries caused solely by external, violent and accidental means, ” provided, however, that “ such benefit shall not be payable if death (1) is caused or contributed to by disease or bodily or mental infirmity or medical or surgical treatment therefor ’ ’.
Plaintiff was named beneficiary. On March 25, 1959, at a hospital, a tonsillectomy was performed upon the husband by a doctor who had performed hundreds of such operations. During the operation a suction machine was used to aspirate any blood which might have been in the area of the operation, but the machine aspirated only phlegm and mucus. Upon completion of the operation, the husband was taken ‘1 down-stairs ”. When he was taken out of the operating room, the bleeding, which is normal in a tonsillectomy, was controlled by ligating the blood vessels, and there was no blood in his mouth. Found to be bleeding from “ a fauces where a tonsil had been removed ’ ’, he was quickly returned to the operating room because ‘ ‘ they couldn’t stop the bleeding which # * # had started.” By that time the patient had expired. Upon autopsy it was found that death was due to asphyxia by aspiration of blood. The doctor who performed the operation testified that there normally is bleeding in a tonsillectomy.
Judgment was properly rendered for defendant for two reasons : Firstly, the operative facts here fail to establish that death resulted solely from external and accidental means within the plain meaning of the double indemnity clause of the policy *177 and, secondly, the death here was excluded from coverage because it was due to medical or surgical treatment.
Though death does not ordinarily result from surgical procedures where tissues of the body, particularly blood vessels which have to be ligated to control bleeding, are invaded, this nevertheless is a possible eventualitv. As was said in Rosenthal v. Mutual Life Ins. Co. (3 Misc 2d 181,183, affd. 8 N Y d2d 1075): “ Admittedly, in all operations, even those of a minor nature, there are certain operative risks. ” Accordingly, if death occurs as a result of surgery and not by reason of the intervention of some outside agency, the result, in the eyes of the law, is not ‘ ‘ accidental ’ ’.
The term “ accident ”, as used in double indemnity clauses of life insurance policies or in similar insurance policies, has been defined as “ something unforeseen, unexpected, extraordinary, an unlooked-for mishap ” (Lewis v. Ocean Acc. & Guar. Corp., 224 N. Y. 18, 21; also, see, e.g., Borneman v. John Hancock Mut. Life Ins. Co., 289 N. Y. 295, 299). In Burr v. Commercial Travelers Mut. Acc. Assn. (295 N. Y. 294, 301), the following definition of “ accident ” was given: “ Legal scholars have spent much effort in attempts to evolve a sound theory of causation and to explain the nature of an ‘ accident ’. Philosophers and lexicographers have attempted definition with results which have been productive of immediate criticism. No doubt the average man would find himself at a loss if asked to formulate a written definition of the word. Certainly he would say that the term applied only to an unusual and extraordinary happening; that it must be the result of chance; that the cause must be unanticipated or, if known, the result must be unexpected. ” A review of the facts in some of the New York eases would seem to be more helpful in obtaining an insight into the meaning of the term 1 ‘ accident or accidental death” than a discussion in the abstract.
In Lewis v. Ocean Acc. & Guar. Corp. (supra), where death was due to a virulent and lethal infection introduced into the body by puncturing a pimple on the lip with an instrument, it was held that death was accidental because “ the dire result, so tragically out of proportion to its trivial cause, was something unforeseen, unexpected, extraordinary, an unlooked-for mishap, and so an accident” (p. 21). In Mansbacher v. Prudential Ins. Co. (273 N. Y. 140), where death occurred when the deceased took an excessive amount of veronal which had been prescribed for him for sleeplessness, it was held that the resulting death was accidental since the unintended taking of an excessive amount was a “ mischance ”. In Burr v. Com *178 mercial Travelers Mut. Acc. Assn. (295 N. Y. 294, supra), it was held that death was accidental when in a raging snowstorm the deceased, attempting to shovel the snow away so that he could get his car out of a ditch, slipped and fell against the car and died a moment later. In that case it.was held that the Trial Judge correctly charged the jury when he said (pp. 300-301) : “ ‘ Accidental means are those which produce effects which are not their natural and. probable consequences. Consequently, if you find from the evidence that Mr. Burr met his death as the result of some unexpected and unforeseen consequences of his efforts to extricate his car from the snow bank on the day in question, you may find that it was the result of external, violent and accidental means. ’ ” In Adlerblum v. Metropolitan Life Ins. Co. (259 App. Div. 859, affd. 284 N. Y. 695), it was held that death was accidental where it was due to an unknown hypersensitivity to novocaine which had been injected into the deceased in preparation for the removal of his tonsils. Similarly in Berkowitz v. New York Life Ins. Co. (256 App. Div. 324), it was held that the death of the deceased was accidental where it was due to a hypersusceptibility to neosalvarsan with which the deceased had been injected as a treatment for syphilis. And in the same vein, in Escoe v. Metropolitan Life Ins. Go. (178 Misc. 698) a recovery of double indemnity for accidental death was permitted where death resulted because of an allergy to a drug known as sulfapyridine, which had been injected to treat pneumonia.
In contradistinction, there are the following cases: In Borne-man v. John Hancock Mut. Life Ins. Go. (289 N. Y. 295, supra), death -resulted from a fractured skull which the deceased sustained when his head hit the pavement upon being punched by a former prize fighter with whom he had a quarrel outside a tavern. In denying a recovery, the court said (p. 299) that ‘ ‘ the fall of the insured, with the concomitant injuries from contact with the pavement, cannot be said to be unforeseen, unexpected or extraordinary ” and that consequently the death was not accidental. In Bennett v. Equitable Life Assur. Soc. (14 Misc 2d 759, affd. 261 App. Div. 819) it was held that death due to postoperative pulmonary embolism was different from what occurred in the Mansbacher and Berkowitz cases (supra), and “ was neither trivial nor the result unforeseen ”, Therefore, concluded the court, such death was not accidental. In Preferred Acc. Ins. Co. v. Clark (144 F. 2d 165), in holding that the death of a 62-year-old man from a pulmonary collapse • on the day after a gall bladder operation was not an accidental death, the court said (p. 168-169): “We can see no distinction *179 between a case where death results from embolism caused by a major operation and one where death is caused from a massive lung collapse caused by a major operation. Both were eventualities which rarely, but sometimes, flow from major abdominal operations. * * * Excluding those cases where the condition of the patient is desperate and an operation is resorted to with the hope of possibly saving his life, we know that death does not ordinarily result from a major abdominal operation. Yet we also know that death does result from complications arising after major abdominal operations in a limited number of cases, and that, while the patient does not expect death, he knows it is a possible eventuality. * * * We do not think that the ordinary man, under the attending facts and circumstances * * * would regard the death as accidental. ” In Rosenthal v. Mutual Life Ins. Co. (3 Misc 2d 181, affd. 8 N Y2d 1075, supra), the insured died from a mechanical intestinal obstruction caused by adherence of the small intestine to the gall bladder bed which developed after a gall bladder operation. In holding that this was not an accidental death within the meaning of a double indemnity clause like the one here under consideration, the court reviewed the Bennett and Clark cases above discussed and said (p. 184):
“ Here, as in the Bennett and Clark cases, death resulted from post-operative complications following an abdominal operation; in the Bennett case, from a pulmonary embolism following a hernia operation; in the Clark case, from massive lung collapse following a gall bladder operation; in the instant case, from intestinal obstruction following a gall bladder operation. The conditions which resulted in death in all of these cases were eventualities which rarely, but sometimes, flow from abdominal operations. Nor was death in any of these cases foreseen, anticipated or expected. Yet it is inconceivable that the average man would regard death in any of these cases as due to an accident.
“ Assuming, therefore, that death in the instant case did not result directly or indirectly from disease or bodily infirmity, here, as in the Bennett and other cases, death, as a matter of law, cannot be said to have been due to an accident. ” (Emphasis supplied.)
It thus follows that the postoperative death here may not be classified as accidental within the terms of the policy. It was a possible, though rare, eventuality of the operation performed.
Appellant contends, however, that, based upon the testimony of the physician who performed the tonsillectomy that “ a broad answer ” to the question whether the bleeding “ could have been an act of negligence on the part of the anesthesiologist ” would be yes; that it ‘ ‘ could have been because of defective appa *180 ratus”; and that it could possibly have been because of a defective endotracheal tube, “ there was proof of some accident.” By such testimony plaintiff did not sustain the burden of proof which rested upon her of showing that the death of the insured was the result of accidental as well as external and violent means, independently of all other causes. (Whitlatch v. Fidelity & Gas. Co., 149 N. Y. 45, 48.) This testimony was pure speculation and did not establish the fact. The direct evidence established that when the deceased was taken out of the operating room, bleeding had been controlled by ligating the blood vessels and there was no blood in his mouth, and that the bleeding started almost immediately thereafter in the patient’s room. So far as the record shows, the bleeding, at the site of the tonsillectomy, was due to the .surgical procedure and to no other cause.
■However, even if the death of the insured were to be deemed accidental, the exclusion clause in the double indemnity provision of the policy would in any event bar recovery. That clause provides that double indemnity is not payable if death ‘1 is caused or contributed to by disease or bodily or mental infirmity or medical or surgical treatment therefor.” Plaintiff failed to establish that her right to recover was ‘ ‘ not barred by the exclusion provision of the contract ’ ’ (Sagorshy v. Maly on, 4 A D 2d 1016; cf. Society of N. Y. Hosp. v. Burstein, 22 A D 2d 768) for, apart from other considerations, it is clear that here the bleeding which led to death was caused or contributed to by the surgical treatment, even if the speculative, testimony urged by appellant that the bleeding could have been caused by the negligence of the anesthesiologist or by the use of defective apparatus be accepted.
A case directly in point is Adlerbhtm v. Metropolitan Life Ins. Co. (259 App. Div. 859, affd. 284 N. Y. 695, supra). The insured there died by reason of a hypersensitive reaction to novocaine which had been injected into him in preparation for .a tonsillectomy. Four policies containing accidental death clauses were involved. In three of them, there were exclusion clauses limiting liability for accidental death if such death resulted ‘ ‘ directly or indirectly from disease or from bodily or mental infirmity ’ ’. The fourth policy not only contained that limitation, but, in addition, contained a provision excluding liability for accidental death if such death was “ caused wholly or partly from * ■* * medical or surgical treatment ” for disease or bodily or mental infirmity. Recovery was permitted on the first three policies, but was denied on the fourth policy solely by reason of the latter exclusion clause, which is identical *181 with the exclusion clause in the policy here in suit. Under the circumstances, the conclusion arrived at by the Trial Justice in this case that “ the record is barren of any medical conclusion other than that the tonsillectomy, which is a surgical procedure, contributed to the bleeding and death and therefore comes within the exclusion clause of the policy ’ ’ was fully warranted under the applicable decisions.
The judgment should be affirmed, with costs.
Di Gtovanna and Ritchie, JJ., concur.
Judgment affirmed, etc.