Timothy J. Sullivan, J.
This is an action wherein the plaintiff seeks to obtain payment of the sum of $5,000, plus interest, claimed to be due under the accidental death benefits provisions of a life insurance policy issued by the defendant to the plaintiffs late husband, Frank S. Iannucci. Trial was had before the court without a jury on June 12, 1975.
The applicable section of the policy of insurance, which is plaintiffs Exhibit 1 in evidence, is contained on a page in the policy numbered 9085-2. It reads in part as follows:
"accidental death benefit
"The Company will pay an Accidental Death Benefit to the beneficiary upon receipt at its Home Office of due proof of the accidental death of the Insured or of the Insured’s Wife, which directly shows with respect to the one whose accidental death occurred that
"(1) Death resulted solely from an accidental bodily injury, and
"(2) Death occurred within 90 days after the bodily injury, and
"(3) Both the injury and death occurred before the policy anniversary nearest his or her 70th birthday while the policy was in full force.
"The Accidental Death Benefit will be payable in addition to the Applicable Sum Insured, and will be
"double indemnity — an amount equal to the applicable sum insured * * *
"accidental death defined
"The phrase 'accidental death’ means death resulting directly and solely from
"a. An accidental injury visible on the surface of the body or disclosed by an autopsy, or
"b. A disease or infection resulting directly from an accidental injury as described and beginning within 30 days after the date of the injury”.
The policy further provides under "Exceptions and Exclusions”, that
"No benefit will be payable under the 'Accidental Death *735 Benefit’ provision if death results, directly or indirectly, or wholly or partially from:
"(1) Any infection or bodily or mental infirmity or disease existing before or commencing after the accidental injury, except a disease or infection as provided in the definition of 'accidental death’ ”.
The evidence at trial established that the insured was admitted to Yonkers General Hospital on January 10, 1972; that he underwent a spinal fusion operation on January 12, 1972; that there was a blood loss of approximately 500 cubic centimeters during the operative procedure; and that 500 cubic centimeters of blood were administered at 10:00 a.m. on the day of the operation. The insured was released from the hospital on January 23, 1972. Mrs. Iannucci testified that after his discharge from Yonkers General Hospital he remained at home; that she prepared his meals; that she never cooked clams or shell food; that she never saw her husband receive any injections; that neither she nor any of her four children contracted hepatitis; that her husband had tattoos on his arms but that they were present before they were married in 1957; and that the only drugs he was using were prescribed by his doctors for pain.
The insured was thereafter admitted to Yonkers Professional Hospital on March 25, 1972 where he expired four days later on March 29, 1975. Mrs. Iannucci testified with respect to the decedent’s symptoms prior to his second hospitalization, and it is uncontroverted that the symptomatology resulting in this second hospitalization commenced within one week prior to decedent’s second hospital admission on March 25.
The only other witness to testify was Dr. Henry Siegel, the Westchester County Medical Examiner. He testified that in his opinion, with a reasonable degree of medical certainty, the deceased contracted serum hepatitis from the blood received on January 12, 1972 and that the hepatitis was the cause of his death. He testified further that serum hepatitis has an incubation period of between 40 to 180 days before symptoms appear; that a person could have serum hepatitis during this latent period and not know it; and that as for the chances of contracting the disease, "it is uncommon particularly in the light of the large number of transfusions that are being given every day.” In making his diagnosis of the cause of death, Dr. Siegel testified that he considered the history in the case, specifically referring to the history of the blood transfusion. *736 Dr. Siegel signed the death certificate and performed an autopsy, listing in both reports the cause of death as "Acute hepatitis, History of Blood Transfusion.” These reports the court received in evidence as plaintiffs Exhibits numbered 2 and 5 respectively. There is no question but that these reports are presumptive evidence of the facts therein stated. (CPLR 4520; Public Health Law, § 4103; Gioia v State of New York, 22 AD2d 181; Regan v National Postal Tr. Assn., 53 Misc 2d 901.) While defense counsel objected to the entry of the aforesaid into evidence on the ground that the medical examiner relied on hearsay in the history, the tendency of the recent Court of Appeals’ decisions has been to permit, to some extent, an expert to refer to medically relevant evidence, although hearsay, provided the data relied on is of the kind ordinarily accepted by experts in the field. (People v Sugden, 35 NY2d 453, 458, 459.) The court finds such to be the case herein. A determination of the cause of death in this case is not being made solely on the documentary evidence before the court. The testimony of Dr. Siegel, whose qualifications are not questioned by the defendant, was crucial to this case. It was not contradicted and is the only expert testimony herein. This witness not only stated with a reasonable degree of medical certainty that decedent died from serum hepatitis, but also that it was contracted from the blood transfusion of January 12, 1972. By negative inference, his testimony ruled out other causes.
Having found that the insured died from serum hepatitis contracted through the blood transfusion, the court now turns to the question of whether his death was "accidental” within the meaning of the policy.
On this question, several cases have been brought to the court’s attention by counsel. First of all, it is clear that this issue is a question of fact. (Lareau v Order of United Commercial Travelers, 5 AD2d 734, affd 6 NY2d 764; Messersmith v American Fid. Co., 232 NY 161.)
The court decides this question of fact for the plaintiff and finds that the decedent’s death was accidental within the meaning of the policy. The courts have repeatedly held that if death was the result of some unexpected and unlikely consequences, then it was caused by accidental means. (Burr v Commercial Travelers Mut. Acc. Assn., 295 NY 294, 300, 301, 302.) Since the decedent herein could not have been reasonably expected to anticipate that he would contract serum *737 hepatitis from contaminated blood transfused during his operation on January 12, 1972, his death was accidental within the meaning of the policy, notwithstanding that he signed an authorization for the operation on January 11, 1972 upon entering the hospital. Wilson v Travelers Ins. Co. (29 AD2d 312) and Bracey v Metropolitan Life Ins. Co. (54 Misc 2d 175) cited by the defendant are not applicable on their facts and are readily distinguishable from this case. In Wilson, the decedent died from coronary artery disease and a brain tumor upon and during the administration of anesthesia. There was nothing wrong with the anesthesia that was administered. It was in no way contaminated as was the blood transfused into the decedent herein. In Bracey, while the court held that where death is a possible eventuality of an operation it is not accidental even though unexpected, in this case, death did not result from the operation, but from the hepatitis.
On the other hand, Mansbacher v Prudential Ins. Co. (273 NY 140), held that an overdose of a drug taken by the decedent was an accidental death. Similarly, in Berkowitz v New York Life Ins. Co. (256 App Div 324, 325, 327) the court held death to be accidental where the decedent was hypersensitive to a certain drug which was injected into his body to fight syphilis. Meyer v New York Life Ins. Co. (249 App Div 243) also held death to be accidental where it resulted from an overdose of a sedative. If, in Meyer, death was accidental where the instrumentality of the death was taken voluntarily and intentionally, so much more so in this case was the death accidental since there is no way that it can be said that the infected blood was knowingly, intentionally or voluntarily taken by the decedent. In some of these cases, death was held by the court to have resulted from external, violent and accidental means. In this case the policy of insurance only required death to result solely from accidental bodily injury, without necessity of any violence.
The next question raised by the defendant is: when does the disease begin: when you get the disease or when you get the symptoms. The testimony of Dr. Siegel makes it clear that symptoms do not appear during the incubation period which is between 40 and 180 days. The policy herein does not set any time reference with respect to symptoms. Accordingly, a fair interpretation of the policy, and again it is axiomatic that ambiguities in an insurance policy must be construed against the insurer (Hartol Prods. Corp. v Prudential Ins. Co., 290 NY *738 44; 29 NY Jur, Insurance, § 619), leads to the court finding as a matter of fact that the hepatitis was contracted within the 30-day time limitation set forth in the policy of insurance, regardless of when symptoms first appeared. The policy herein is a lengthy and detailed document. If the insurer had intended to place a time limitation on payment of an accidental death benefit within a specified period to be determined by the onset of symptoms of a disease or infection, the policy should have so stated.
Accordingly, the court finds herein that the plaintiff has sustained her burden of proving:
1. That an "accidental bodily injury” occurred within the meaning of the policy;
2. That such injury directly resulted in the fatal disease;
3. That such disease began within 30 days from the date of the bodily injury.
The court therefore makes the following findings of fact:
1. That on or about June 1, 1962, the defendant, John Hancock Mutual Life Insurance Co., issued to the deceased, Frank S. Iannucci, a policy of life insurance No. 7-695-370 in the basic amount of $5,000 with accidental death benefit provisions wherein the plaintiff, Patricia Iannucci, the wife of the insured, was the named and designated beneficiary.
2. That the policy. of life insurance was in full force and effect on March 29, 1972 when the insured died at the age of 41 years.
3. That said policy provided for the payment of an additional death benefit of $5,000 in the event that the defendant received proof which directly showed that the death of the insured resulted solely from an accidental bodily injury meaning, an accidental injury visible on the surface of the body or disclosed by an autopsy, or a disease or infection resulting directly from an accidental injury as described, and beginning within 30 days after the day of injury.
4. That on January 12, 1972 the insured underwent a spinal fusion operation at Yonkers General Hospital during which he received a transfusion of 500 cubic centimeters of blood.
5. That the insured first experienced symptoms of a disease known as hepatitis within one week prior to his admission to Yonkers Professional Hospital on March 25, 1972.
6. That the insured died on March 29, 1972 as a result of the hepatitis while at Yonkers Professional Hospital.
*739 7. That the deceased, prior to his death had not worked since March of 1971; that from said time until the time of his death, with the exception of the hospitalizations, he was basically confined to his home where he resided with his wife and four children and during this period of time, his wife prepared all his meals which did not include any clams or shell food; and that during said period of time neither decedent’s wife, the plaintiff herein, nor her children contracted hepatitis.
8. That an autopsy was performed by Dr. Henry Siegel, the Medical Examiner for Westchester County, which autopsy confirmed the cause of death as acute hepatitis.
9. That there are two types of hepatitis as testified to by Dr. Siegel, serum hepatitis and infectious hepatitis, and that serum hepatitis has an incubation period from 40 to 180 days.
10. That the chances of a person contracting hepatitis from blood transfusions is uncommon in light of the large number of transfusions that are given everyday, as testified to by Dr. Siegel.
11. That the deceased contracted serum hepatitis from the blood transfusion which he received on January 12, 1972 and which resulted in his death.
12. That the disease or infection which caused the hepatitis was transmitted to deceased at the time of the blood transfusion on January 12, 1972.
13. That a certificate of death for the insured was signed by Dr. Siegel and was submitted to the defendant together with a proof of death and demand for payment, which payment has been refused.
The following constitutes the court’s conclusions of law:
1. Plaintiff had the burden of proving that the insured’s death was the direct result of accidental bodily injury within the meaning of the policy of insurance.
2. That the death of the insured, Frank S. Iannucci, resulted solely from accidental bodily injury within the meaning of the policy of insurance; that said death occurred within 90 days after the bodily injury and that the injury and death occurred before the policy anniversary nearest the deceased’s 70th birthday and that the policy of insurance was in full force.
3. That the infection which resulted in the deceased’s death began within 30 days after the date of injury.
4. That the plaintiff, Patricia Iannucci, the named and *740 designated beneficiary of said policy of insurance is entitled to the sum of $5,000 with interest at 6% from March 29,1972, as a result of the accidental death of the deceased.