ALPHONSE V. BELLANCA, Plaintiff, v. THE TRAVELERS INSURANCE COMPANY, Defendant.

Supreme Court, Erie County, October 26, 1936.

*Frank A. Miceli*, for the plaintiff.

*Harold J. Adams*, for the defendant.

MALONEY, J.  The defendant issued a contract of insurance to plaintiff whereby it insured the plaintiff against loss resulting directly and independently from all other causes from bodily injury sustained during the term of the contract and effected solely through accidental means, subject to the provisions, conditions and limitations therein contained.  Among other provisions, the policy provided, viz.: " The insurance under this Policy shall not cover hernia, nor shall it cover accident, injury, death, disability or other loss caused directly or indirectly, wholly or partly, (1) by bacterial infections (except pyogenic infections which shall occur through an accidental cut or wound), or (2) by any other kind of disease."

The plaintiff sustained an injury to his knee September 1, 1934, resulting solely from an accidental injury independently of all other causes.  The defendant company paid weekly indemnity under the policy to the plaintiff amounting to $380.

On April 11, 1935, plaintiff's injured knee was found to be infected by bacteria, viz., tuberculous.  Subsequent to the last-mentioned date defendant refused to pay plaintiff further indemnity, relying on the terms of its policy.

There is no dispute as to the facts in this case. If the plaintiff is entitled to recover he is entitled to recover the indemnity demanded in the complaint. The sole question presented to this court is whether the contract of insurance intended to and does mean that in the event of an incapacitating injury being sustained by the insured becoming infected by bacteria during any portion of the period of incapacitation, the defendant is released from further liability regardless of whether or not plaintiff, prior to the accident, was a normal, healthy, athletic young man who gave no evidence up to the time of the injury that his body was infected by the tubercle bacilli to any degree. The evidence in this case indicates clearly that bacteria, particularly the tubercle bacilli, were or are present in the bodies of eighty per cent to ninety per cent of all human beings.

It is an accepted fact that the human body contains various bacteria obtained through inhalation, contact, exposure, etc., and that the normal, healthy bodily processes protect it from becoming infected by such germs. A breaking down or weakening of this normal bodily resistance to such bacteria may be caused by trauma. In this case the injury and incapacitation, in my opinion, lessened, weakened or reduced plaintiff's normal resistance, causing bacteria that would otherwise have been harmless and impotent to affect the injured tissues and ligaments of the plaintiff's knee. The time the bacteria may have entered the body is unascertainable. Infection would not have occurred had there been no accident. It seems logical to find, therefore, that bacteria were not the cause of plaintiff's incapacitation either wholly or partly, directly or indirectly. The accident alone caused the incapacitation of the plaintiff.

In construing a contract of insurance Judge CARDOZO, in *Lewis* v. *Ocean Acc. & G. Corp.* (224 N. Y. 18, at p. 21), states: " But our point of view in fixing the meaning of this contract, must not be that of the scientist. It must be that of the average man (*Brintons* v. *Turvey*, L. R. 1905 A. C. 230; *Ismay, Imrie & Co.* v. *Williamson*, L. R. 1908 A. C. 437, 440). Such a man would say the dire result, so tragically out of proportion to its trivial cause, was something unforeseen, unexpected, extraordinary, an unlooked-for mishap, * * *. This test — the one that is applied in the common speech of men — is also the test to be applied by courts."

Chief Judge CARDOZO, in *Silverstein* v. *Metropolitan Life Ins. Co.* (254 N. Y. 81, 83), wherein the construction of a provision in an accident policy providing that recovery could not be had by the beneficiary provided death was caused or contributed to by disease or a bodily infirmity, wrote:

" The insured, while lifting a milk can into an ice box, slipped and fell, the can striking him on the abdomen * * *. A surgeon, opening the abdomen, found a perforation at the junction of the stomach and the duodenum through which the contents of the stomach escaped into the peritoneum, causing peritonitis and, later, death. At the point of perforation there had been a duodenal ulcer, about the size of a pea. The existence of this ulcer was unknown to the insured, and were it not for the blow, would have had no effect upon his health, for it was dormant, and not progressive, or so the triers of the facts might find. Even so, there had been a weakening of the wall in some degree, with the result that the impact of the blow was followed by perforation at the point of least resistance. The question is whether death was the result of an accident to the exclusion of other causes.

" We think the evidence sustains a finding that the ulcer was not a disease or an infirmity within the meaning of the policy. Left to itself, it would have been as harmless as a pimple or a tiny scratch. Only in the event that it was progressive would it become a source of pain or trouble. If dormant, as it was found to be, it was not only harmless in itself, but incapable of becoming harmful except through catastrophic causes, not commonly to be expected. In a strict or literal sense, any departure from an ideal or perfect norm of health is a disease or an infirmity. Something more, however, must be shown to exclude the effects of accident from the coverage of a policy. The disease or the infirmity must be so considerable or significant that it would be characterized as disease or infirmity in the common speech of men (*Eastern Dist. Piece Dye Works* v. *Travelers Ins. Co.*, 234 N. Y. 441, 453). ' Our guide is the reasonable expectation and purpose of the ordinary business man when making an ordinary business contract ' (*Bird* v. *St. Paul F. & M. Ins. Co.*, 224 N. Y. 47, 51; *Goldstein* v. *Standard Acc. Ins. Co.*, 236 N. Y. 178, 183; *Van Vechten* v. *American Eagle Fire Ins. Co.*, 239 N. Y. 303). A policy of insurance is not accepted with the thought that its coverage is to be restricted to an Apollo or a Hercules.

" A distinction, then, is to be drawn between a morbid or abnormal condition of such quality or degree that in its natural and probable development it may be expected to be a source of mischief, in which event it may fairly be described as a disease or an infirmity, and a condition abnormal or unsound when tested by a standard of perfection, yet so remote in its potential mischief that common speech would call it not disease or infirmity, but at most a predisposing tendency (*Leland* v. *Order of U. C. Travelers*, 233 Mass. 558, 564; *Collins* v. *Casualty Co.*, 224 Mass. 327; *Mutual*

*Life Ins. Co.* v. *Dodge*, 11 Fed. Rep. [2d] 486; cert. denied, 271 U. S. 677; *Taylor* v. *N. Y. Life Ins. Co.*, 176 Minn. 171, 174). * * *

" The governing principle has been stated by RUGG, C. J., with clearness and precision: ' If there is no active disease, but merely a frail general condition, so that powers of resistance are easily overcome, or merely a tendency to disease which is started up and made operative, whereby death results, then there may be recovery even though the accident would not have caused that effect upon a healthy person in a normal state ' (*Leland* v. *U. C. Travelers, supra,* at p. 564). An ulcer as trivial and benign as an uninfected pimple, is at most a tendency to an infirmity, and not an infirmity itself.

" Any different construction would reduce the policy and its coverage to contradiction and absurdity. The infinite interplay of causes makes it impossible to segregate any single cause as operative at any time and place to the exclusion of all others, if cause is to be viewed as a concept of science or philosophy (*Schwarz* v. *Commercial Travelers Mut. Acc. Assn.,* 254 N. Y. 523, affg. 227 App. Div. 711; 132 Misc. Rep. 200; *Lewis* v. *Ocean Acc. & G. Corp.,* 224 N. Y. 18, 20). The courts have set their faces against a view so doctrinaire, an estimate of intention so headed toward futility. ' We are to follow the chain of causation so far, and so far only, as the parties meant that we should follow it. " The causes within their contemplation are the only causes that concern us " ' (*Goldstein* v. *Standard Acc. Ins. Co., supra*)."

In determining the construction of the provisions of defendant's policy the application of the rules laid down in the cases hereinabove cited is important. Disease or bodily infirmity in many, if not most, instances is the result of a bacterial infection. Disease or bodily infirmity to some considerable extent are both inclusive of bacterial infection. In my opinion, plaintiff's incapacitation was the result solely of an accidental bodily injury within the terms of defendant's contract of insurance as I construe it.