Mabtiw B. Stecheb, J.
Decision was reserved on the defendant’s motion to dismiss the complaint at the end of the plaintiff’s case; and thereafter the jury found for the plaintiff. The action was brought by a benefiiciary to recover under the double indemnity provisions of a life insurance policy. In order to recover, she was required to prove, in the language of the policy, that death “ resulted from accidental bodily injury, directly and independently of all other causes ” and was neither “ caused [nor] contributed to, directly or indirectly, by disease or illness of any kind, [or] physical or mental infirmity.”
Directly presented by this motion is the question: is every cerebral aneurysm whose rupture contributes to death, a disease, illness or infirmity which, as a matter of law, precludes recovery under the quoted language of the policy?
Viewing the evidence most favorably to the plaintiff, the jury could have found that on August 8, 1969, Myles Amend, Jr. was a young, vigorous, athletic attorney not quite 36 years of age; that referable to the aneurysm, he was completely asymptomatic; that on that date, while seeking to moor a small boat in high wind and rough seas and while standing in an exposed, hazardous position, he fell into the shallow water striking his head, on the bottom, and was rendered unconscious. The jury could further have found that due to his long immersion, water-filled lungs and hyproxia, Mr. Amend’s blood pressure was reduced; and that the efforts at resuscitation on the beach and medication thereafter administered caused the pressure to elevate so, that a cerebral berry aneurysm burst causing death. Mr. Amend in fact died in Central Suffolk Hospital two days after the boating mishap without ever having regained consciousness.
Both parties’ expert witnesses concurred in the opinion that an aneurysm is probably congenital. It reflects the absence of one or two of three (or four) layers (or coatings) of a blood vessel. A berry aneurysm is one which presents a distention at the point of the aneurysm in the form of a berry. A person having such an aneurysm may live a long and normal life, never aware of or troubled by it. On the other hand, an aneurysm may burst at' any time without known cause. Some aneurysms will not rupture under the extremes of stress (cf. Saul v. New York Life Ins. Co., 14 A D 2d 452); and others undergo a progressive worsening producing ‘ ‘ leakage ’ ’ of the vessel symptomiz@d by pain, impaired vision, nausea, loss of balance or even loss of consciousness (cf. Sugarman v. New England Mut. Life *404 Ins. Co., 201 F. Supp. 759, 760). As previously indicated, the jury might well have found that this aneurysm was quiescent, nonleaMng and asymptomatic and might have continued that way but for the fall and the events necessarily following it.
Not every condition which weakens a person or predisposes him to illness or death is disqualifying under the language of the policy. A distinction must be drawn between “ a morbid or abnormal condition [which] may be expected to be a source of mischief * * * and a condition * * * so remote in its potential mischief that common speech would call it * * * a predisposing tendency ” (Silverstein v. Metropolitan Life Ins. Co., 254 N. Y. 81, 84). “ If there is no active disease, but merely a frail general condition * * * or merely a tendency to disease * * * then there may be recovery even though the accident would not have caused that effect upon a healthy person in a normal state ” (Silverstein, supra, p. 85).
Thus a pre-existing heart disease which contributed to death would not preclude recovery under such a policy if a jury could properly find that the heart disease, at the time of the accident, was a dormant condition made active by the accident (Eisser v. Commercial Travelers Mut. Acc. Assn. of Amer., 247 App. Div. 727, affd. 272 N. Y. 581; Burr v. Commercial Travelers Mut. Acc. Assn. of Amer., 295 N. Y. 294, 304-306). Similarly, although a thrombosis could hot occur in the absence of a prior existing arteriosclerosis, where a person has suffered no ill effects from arteriosclerosis and a thrombosis immediately followed a severe accident, the accident was deemed the exclusive cause of the disability (McGrail v. Equitable Life Assur. Soc., 292 N. Y. 419, 426-427). And where a blow to the abdomen causes a rupture of the duodenum at the point of a quiescent ulcer, the blow will be deemed the sole cause of death under a policy whose provisions are substantially the same as those at bar (Silverstein v. Metropolitan Life Ins. Co., 254 N. Y. 81, supra).
The defendant, in support of its motion, seeks to rely on Sugarman v. New England Mut. Life Ins. Co. (201 F. Supp. 759). There recovery was denied under a similar policy clause where an assured died following a ruptured cerebral aneurysm. On the facts, however, the court concluded (p. 761) “ that there was not a blow or fall preceding rupture of the aneurysm ’ ’ thereby precluding any accident as the proximate cause of death. The trial court also concluded “asa matter of law ’ ’ that the morbidity of the artery “ was a grave infirmity or disease ” (p. 762); but it is clear that the aneurysm there was 1 ‘ developmental and its final state a function of time measured in years ” (p. 760). No such evidence was produced here.
*405 By reason of the foregoing I am drawn to the conclusion that with cerebral aneurysms, as with other bodily afflictions, distinctions must be drawn between the active disorder which is in a progressive state irrespective of the accident and is a cause of death (cf. McMartin v. Fidelity & Cas. Co. of N. Y., 264 N. Y. 220) and the quiescent condition which is static or a predisponing tendency and is properly characterized as merely a “ frail ” condition (Silverstein v. Metropolitan Life Ins. Co., 254 N. Y. 81, 85, supra).
The jury was justified in finding that Myles Amend, Jr.’s aneurysm belonged to the latter category and the defendant’s motions must therefore be denied.
Judgment may be entered on the jury’s verdict in the sum of $10,000 with interest from November 1,1969; but execution shall be stayed for SO days after service of a copy of the judgment with notice of entry.