Paul E. SVENSSON, Plaintiff,

v.

**SECURIAN LIFE INSURANCE COMPANY, Defendant.**

**Case No. 08–CV–10148 (KMK).**

United States District Court,
S.D. New York.

March 31, 2010.

Stephen H. Slater, Esq., Hodges, Walsh & Slater LLP, White Plains, NY, for Plaintiff.

James P. Evans, Esq., Hiscock & Barclay, LLP, Syracuse, NY, for Defendant.

## OPINION AND ORDER

KENNETH M. KARAS, District Judge:

What is an accident? "More precisely, when is death accidental under insurance policies specifically written for such events? For a century and a half, courts and underwriters have struggled to answer what has been described as 'one of the more philosophically complex simple questions.'" Adam F. Scales, *Man, God and the Serbonian Bog: The Evolution of Accidental Death Insurance*, 86 Iowa L. Rev. 173, 175 (2000) (quoting *Fegan v. State Mut. Life Assurance Co. of Am.*, 945 F.Supp. 396, 399 (D.N.H.1996)).

Plaintiff Paul Svensson, Esq. ("Plaintiff" or "Mr. Svensson"), brings this suit against Securian Life Insurance Company ("Defendant" or "Securian"). Plaintiff's wife, at the time of her death, was insured by Defendant under a $200,000 policy covering "death by accidental injury." She died of a respiratory illness which she developed after inhaling a community-spread bacterial pathogen. As the policy's beneficiary, Plaintiff alleges that Defendant owes him $200,000. Defendant has moved to dismiss or, in the alternative, for summary judgment. Plaintiff, in turn, has cross-moved for summary judgment. For the reasons stated herein, Defendant's Motion to Dismiss is granted.

### I. Background

#### A. Facts

The Court assumes the following facts, as alleged in the Complaint, to be true for the purposes of the Motion to Dismiss. Plaintiff's late wife, Providencia R. Svensson ("Decedent," or "Mrs. Svensson"), was insured under a policy owned by Defendant covering "death by accidental injury" ("the Policy").[1] (Compl. ¶¶ 12, 13; Decl. of James P. Evans, Ex. A ("Def.'s Ex. A").) Mr. Svenson was the designated beneficiary. (Compl. ¶ 16.) The Policy is styled as an "accidental death benefit" and contains a bold disclaimer stating that it "PROVIDES ACCIDENT ONLY INSURANCE AND DOES NOT PAY BENEFITS FOR LOSS FROM SICKNESS." (Def.'s Ex. A.) The Policy defines "death by accidental injury" as a death that "results directly and independently of all other causes from an accidental drowning or from an accidental injury which was unintended, unexpected, and unforeseen." (*Id.*) The Policy further states that "[i]n no event will we pay the accidental death benefit if your death results from or is caused directly or indirectly by any of the following: ... bodily or mental infirmity, illness, or disease," or "infection, other than infection occurring simultaneously with, and as a result of, the accidental injury." (*Id.*)

According to the Complaint, on March 10, 2008, Decedent "sustained an acciden-

---

1. The Policy also provided coverage for accidental dismemberment. The Policy is identified as Contract No. 0390788–001101839198. (Compl. ¶ 7.)

tal injury from the unintended, unexpected, and unforeseen community-spread transmission of a Group A streptococcus bacterial pathogen on March 10, 2008 that resulted directly and simultaneously in an infection." (*Id.* ¶ 21.) Further, "the unforeseen inhalation of Group A streptococcus bacteria resulted in the simultaneous infection of [Decedent's] lungs leading to her death from bronchopneumonia" on March 18, 2008. (*Id.* ¶¶ 24–25.)

## B. Procedural History

Plaintiff filed the instant action on November 21, 2008, claiming both breach of contract and breach of fiduciary duty. (Dkt. No. 1.)[2] On April 17, 2009, Defendant moved to dismiss this case or, in the alternative, for summary judgment. (Dkt. No. 17.) Plaintiff opposed these motions, and cross-moved for summary judgment. (Dkt. No. 19.)

## II. Discussion

### A. Standard of Review

"On a Rule 12(b)(6) motion to dismiss a complaint, the court must accept a plaintiff's factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Gonzalez v. Caballero,* 572 F.Supp.2d 463, 466 (S.D.N.Y.2008); *see also Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) ("We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor") (internal quotation marks omitted). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations omitted) (second alteration in *Twombly* ). "Factual allegations must be enough to raise a right to relief above the speculative level," *id.,* and "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, 127 S.Ct. 1955.

Simply put, Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955. If Plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.; see also Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) ("Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief'" (internal citation omitted) (quoting Fed.R.Civ.P. 8(a)(2)) (alteration in original)).

Finally, in adjudicating a Rule 12(b)(6) motion, a court may consider "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference," or facts of which the Court may take judicial notice. *Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 100 (2d Cir.2005); *see also Leonard F. v. Isr. Disc. Bank of N.Y.,* 199 F.3d 99, 107 (2d Cir.1999). The Court also may consider documents that are refer-

---

2. Plaintiff is domiciled in New York. (Compl. ¶ 5.) Defendant is domiciled in Minnesota. (*Id.* ¶ 4.) Accordingly, federal jurisdiction is proper under 28 U.S.C. § 1332.

enced in and integral to the Complaint. *See Blakeman v. Walt Disney Co.*, 613 F.Supp.2d 288, 297 (E.D.N.Y.2009). Here, although Plaintiff did not attach the Policy, the Court properly may consider it without converting Defendant's motion to one for summary judgment, as the Complaint explicitly refers to, and relies on, the Policy. *See Jurupa Valley Spectrum, LLC v. Nat'l Indem. Co.*, No. 06–CV–4023, 2007 WL 1862162, at *5–*6 (S.D.N.Y. June 29, 2007), *aff'd*, 555 F.3d 87 (2d Cir.2009).

## B. Analysis

### 1. Did Decedent Suffer From an Accidental Injury?

Plaintiff's claim derives solely from the Policy, which provides that "the accidental death benefit" will be paid if that the decedent "died as the result of an accidental injury." The Policy explains that "death by accidental injury" means that death "results directly and independently of all other causes from an accidental drowning or from an accidental injury which was unintended, unexpected, and unforeseen." [3] However, the Policy also provides that "in no event" will it pay benefits if death "results from" seven circumstances, including of relevance here, "bodily or mental infirmity, illness, or disease," and "infection, other than infection occurring simultaneously with, and as a result of, the accidental injury."

Plaintiff claims that he is entitled to benefits under this Policy because his wife died from an accidental injury. In particular, he claims that his wife sustained an accidental injury from the unintended, unexpected and unforeseen, community-spread transmission of a Group A streptococcus bacterial pathogen, and that as a

direct result of this, she passed away from bronchopneumonia.

The first question, then, is whether Decedent's fatality was the result of an "accidental injury." This initially requires the Court to consider what the Policy means by "accidental injury." Under New York law, "the initial interpretation of a contract 'is a matter of law for the court to decide.'" *K. Bell & Assocs. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir.1996) (quoting *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 299 (2d Cir. 1996)). "The cardinal principle for the construction and interpretation of insurance contracts—as with all contracts—is that the intentions of the parties should control." *Newmont Mines Ltd. v. Hanover Ins. Co.*, 784 F.2d 127, 135 (2d Cir. 1986). [4] The inquiry at this initial interpretation stage is whether the insurance policy is unambiguous with respect to the question disputed by the parties. Unambiguous terms are to be given their plain and ordinary meaning, *New York v. Blank*, 27 F.3d 783, 792 (2d Cir.1994), as it has long been the rule in New York that, "[i]n an insurance policy the words are to be judged in the light of the understanding of the average [person] who procures such a policy," *Berkowitz v. N.Y. Life Ins. Co.*, 256 A.D. 324, 10 N.Y.S.2d 106, 109 (1939). When the policy's provisions are unambiguous and intelligible, courts should enforce them as drafted. *See Parks Real Estate Purchasing Group v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir.2006). However, an ambiguity exists where "the terms of an insurance contract could suggest 'more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is

---

**3.** The Policy further provides that death "must occur within 90 days after the date of injury."

**4.** Because this is a diversity case, New York substantive law governs. *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996).

cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Morgan Stanley Group Inc. v. New Eng. Ins. Co.*, 225 F.3d 270, 275 (2d Cir.2000) (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir.1997)). It is axiomatic that ambiguities in insurance policies must be construed against the insurer. *See Hartol Prods. Corp. v. Prudential Ins. Co. of Am.*, 290 N.Y. 44, 47 N.E.2d 687, 690 (1943) ("It is well-settled that if a policy of insurance is written in such language as to be doubtful or uncertain in its meaning, all ambiguity must be resolved in favor of the policy holder and against the company"); *see also U.S. Underwriters Ins. Co. v. Affordable Hous. Found.*, 256 F.Supp.2d 176, 180 (S.D.N.Y.2003) ("Under New York law, contracts of insurance are strictly construed in favor of the insured and against the insurer."). But, the "beneficiary of an insurance policy bears the burden of proving that the death of the insured was covered by the terms of the policy." *Lachter v. Ins. Co. of N. Am.*, 145 A.D.2d 540, 536 N.Y.S.2d 93, 93 (1988) (citation omitted); *see also Saint Calle v. Prudential Ins. Co. of Am.*, 815 F.Supp. 679, 687–88 (S.D.N.Y.1993).

Unlike ordinary life insurance, which generally provides coverage simply for death, accidental death insurance pays only if the death of the insured was accidental.[5] Accident insurance is therefore a more narrow class of insurance, as it limits the circumstances of coverage, but is at the same time broader in that it often offers larger indemnity than normal life insurance.[6] As noted, the etymological challenges in accidental death insurance policies have flummoxed courts since such policies were first introduced by the Railway Passengers Assurance Company in England in 1849.[7] Scales, *supra*, at 179. One court put it this way: "What is an accident? Everyone knows what an accident is until the word comes up in court." *Brenneman v. St. Paul Fire & Marine Ins. Co.*, 411 Pa. 409, 192 A.2d 745, 747 (1963).

■ Here, the Policy provides that benefits will only be paid if the death of the insured directly results from "accidental drowning or from an accidental injury which was unintended, unexpected, and unforeseen." The policy does not offer a precise definition of "accidental injury," however.[8] The caselaw therefore dictates

---

**5.** In 2002, accidents accounted for only 4.4% of deaths in the United States. *See* Kenneth D. Kochanek, et al., *Deaths: Final Data for 2002*, 53 Nat'l Vital Stat. Rep., Oct. 12, 2004, at 5. Heart disease (28.5%), cancer (22.8%), strokes (6.7%), and chronic lower respiratory diseases (5.1%) all accounted for more deaths. *Id.* Influenza and pneumonia accounted for 2.7%. *Id.*

**6.** Originally, accident insurance was sold as a separate product, but it later was often coupled with standard life insurance (as "double indemnity" coverage), "largely shaking off its early moorings to the travel industry." Scales, *supra*, at 177.

**7.** The company, a creature of Parliament, had a business model described as "straightforward and perceptive." Scales, *supra*, at 180. Railway companies were statutorily deemed

to be the agents of the Assurance Company and would sell insurance as part of the ticket. *Id.* The insurance was to indemnify the passenger if he might "sustain any personal injury whatever incident to, and consequent on, railway traveling." *Id.* (quoting *Insurance From Railway Accidents*, Times (London), Jan. 6, 1849, at 5). The business model succeeded because rail travel was viewed as hazardous, even though accident rates for rail travel were relatively low. *Id.* at 182. This created high demand for relatively minor risk. *Id.*

**8.** "The fact that a term is not defined in a[n] [insurance] policy ... does not alone make it ambiguous." *Riverwood Int'l Corp. v. Employers Ins. of Wausau*, 420 F.3d 378, 383 (5th Cir.2005) (noting that even though the insurance policy did not define "accident," that term could be given "its plain meaning");

that this phrase should be given its ordinary meaning, as understood by the "average person." *See Barnes v. Am. Int'l Life Assurance Co. of N.Y.*, 681 F.Supp.2d 513, 522 (S.D.N.Y.2010) ("New York courts have held that the term 'accident' is to be considered objectively and given the meaning ascribed to it by the 'average man'; it is 'to be construed and considered according to the ordinary understanding and common usage and speech of people generally.'" (quoting *Regan v. Nat'l Postal Transp. Ass'n*, 53 Misc.2d 901, 280 N.Y.S.2d 319, 329 (Civ.Ct.1967))); *accord Arthur A. Johnson Corp. v. Indemnity Ins. Co. of N. Am.*, 7 N.Y.2d 222, 196 N.Y.S.2d 678, 164 N.E.2d 704 (1959). This view was espoused by Justice Cardozo, both as an Associate Justice of the Supreme Court, and as a New York Court of Appeals judge, as he rejected attempts to distinguish between accidental results and accidental means. *See Landress v. Phoenix Mut. Life Ins. Co.*, 291 U.S. 491, 499, 54 S.Ct. 461, 78 L.Ed. 934 (1934) (Cardozo, J., dissenting) ("The attempted distinction between accidental results and accidental means will plunge this branch of the law into a Serbonian Bog. Probably it is true to say that in the strictest sense ... there is no such thing as an accident. On the other hand, the average man is convinced that there is, and so certainly is the man who takes out a policy of accident insurance. It is his reading of the policy that is to be accepted as our guide ....") (citations and internal quotation marks omitted); *Lewis v. Ocean Accident & Guar. Corp.*, 224 N.Y. 18, 120 N.E. 56, 57 (1918) (Cardozo, J.) ("[O]ur point of view in fixing the meaning of this contract must not be that of the scientist. It must be that of the average man. Such a man would say that the dire result, so tragically out of proportion to its trivial cause, was something unforeseen, unexpected, extraordinary, an unlooked-for mishap, and so an accident.").[9] This approach includes a subjective component, which allows for consideration of "the casuality from the point of view of the insured, ... to see whether or not, from his point of view, it was unexpected, unusual, and unforeseen." *Miller v. Cont'l Ins. Co.*, 40 N.Y.2d 675, 389 N.Y.S.2d 565, 358 N.E.2d 258, 259 (1976) (quoting 1A John Alan Appleman, *Ins. L. & Prac.* § 391 (1972)).[10]

New York courts have considered the question of what meaning an average person would ascribe to the term "accidental injury." Thus, for example, while New York courts have broadly construed the term "accident," they have not endorsed the proposition that "*any* unexpected event is an accident." *Michaels v. City of*

---

*accord Air France v. Saks*, 470 U.S. 392, 399–400, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985) (determining the meaning of "accident" under Warsaw Convention, even though not defined therein).

**9.** Judge Posner agrees: "The insured ought to know what he is getting in his insurance policy, so that he can decide whether he would like more coverage at a higher price or less at a lower price." *Senkier v. Hartford Life & Accident Ins. Co.*, 948 F.2d 1050, 1052–53 (7th Cir.1991) (endorsing Justice Cardozo's view).

**10.** Ascertaining the expectations of the average person can involve reference to dictionaries. Thus, Plaintiff's dictionary definition of accident, as being something that arises "from extrinsic causes" or something "occurring unexpectedly or by chance" (Mem. of Law Submitted on Behalf of Pl. by Their [sic] Att'ys ("Pl.'s Mem") 5), is useful; so too is the dictionary definition of "injury," as being an "act that damages or hurts." Merriam–Webster's Online Dictionary, www.merriam-webster.com/dictionary/injury (last visited Mar. 29, 2010). Still, other dictionaries provide definitions of the whole phrase, so that accidental injury could be defined as "an injury occurring as the unforeseen and chance result of a voluntary act." Dictionary.com, http://dictionary.reference.com/browse/accidental+injury (last visited Mar. 29, 2010).

*Buffalo,* 85 N.Y.2d 754, 628 N.Y.S.2d 253, 651 N.E.2d 1272, 1274 (1995). Instead, New York courts have "focused on whether the casualty, although unexpected, was 'catastrophic or extraordinary.'" *Id.* (citing *Lerner v. Rump Bros.,* 241 N.Y. 153, 149 N.E. 334, 335 (1925); *Connelly v. Hunt Furniture Co.,* 240 N.Y. 83, 147 N.E. 366 (1925) (Cardozo, J.)). Thus, for example, the New York Court of Appeals, going back to the days of then-judge Cardozo, has distinguished cases where a disease is caught from germs that are "absorbed into the system through normal channels of entry" from those "when the channel of infection is abnormal or traumatic," with the latter being viewed as "something catastrophic or extraordinary, a mishap or an accident." *Connelly,* 147 N.E. at 367. As then-Judge Cardozo explained:

> Germs may indeed be inhaled through the nose or mouth, or absorbed into the system through normal channels of entry. In such cases their inroads will seldom, if ever, be assignable to a determinate or single act, identified in space or time. For this as well as for the reason that the absorption is incidental to a bodily process both natural and normal, their action presents itself to the mind as a disease and not an accident.

*Id.* (citations omitted). Thus, in then-Judge Cardozo's view, while contraction of an infectious illness from an abnormal event, such as "a lesion or a cut," could be an accident, a "common-sense appraisement of everyday forms of speech and modes of thought must tell us when to stop." *Id.* (internal quotation marks omitted).[11]

Then-Judge Cardozo's common sense approach has long been applied by New York courts. Thus, death resulting from an infection contracted through ordinary circumstances has been deemed to be a disease, and not an accident or an injury. *See Michaels,* 628 N.Y.S.2d 253, 651 N.E.2d at 1273–74 (recognizing distinction between diseases contracted through normal means, and those that are the result of abnormal means); *Bacon v. U.S. Mut. Accident Ass'n,* 123 N.Y. 304, 25 N.E. 399, 400 (1890) ("There cannot be the slightest doubt that malignant pustule is regarded generally, by those who have but the usual acquaintance with such matters, as a disease ... [Because] no abrasion of the skin i[s] needed to produce the contact of the *bacilli,* ... what follows from such contact seems to be as plainly a disease as in the case of small-pox or typhoid fever."); *Richardson v. Greenburg,* 188 A.D. 248, 176 N.Y.S. 651, 655 (1919) ("The word 'accident' and the word 'injury' are not synonymous. Accidents occur without injury, and injuries occur without accident.... If it can ever be said that there is involved an accident or an occurrence in the sudden invasion of the human body by bacteria, then in substantially all infectious diseases there is a precedent accident, and therefore an accidental injury."); *Tucker v. Commercial Travelers Mut. Accident Ass'n of Am.,* 51 N.Y.S.2d 413, 414 (City Ct.1944) ("Illness or disease of this kind [aspiration of germs resulting in putrid abscess] though constituting a departure from normal is not an accident in the common speech. It is an accident only in the sense in which we speak of an accident of nature.").[12]

---

11. In then-Judge Cardozo's view, the abnormality that might lead to a lethal infection, and thus an accidental injury, need not be violent nor traumatic. Indeed, in *Connelly,* he concluded that the deceased had suffered an accidental injury, under New York's Workers' Compensation law, when gangrenous matter had infected deceased through a "little cut in his hand." *Id.* at 366, 368. In such a circumstance, "[t]he whole group of events, beginning with the cut and ending with death, was an accident, not in one of its phases, but in all of them." *Id.* at 367.

12. Plaintiff attempts to distinguish *Bacon,* arguing that the accident policy in that case

The same rationale has been applied by numerous other courts. For example, in *Simpson v. Travelers Ins. Co.*, 121 F.2d 683, 684 (2d Cir.1941), the Second Circuit distinguished between pneumonia contracted through normal means, and pneumonia which was the result of a hypodermic injection. The former would not count as a "bodily injury," but the latter was held to be an injury, and therefore covered by an accidental death insurance policy. *Id.* Likewise, in *Chase v. Business Men's Assurance Co. of Am.*, 51 F.2d 34 (10th Cir.1931), the Tenth Circuit held that death from typhoid fever, itself the result of consumption of contaminated water, was not a bodily injury "effected solely through accidental means." Relying on *Connelly*, among others, the Tenth Circuit distinguished between an accidental injury that "brings about or causes a disease," and a "disease accidentally contracted resulting in bodily impairment which causes death." *Id.* at 36. In the latter circumstance, there is "no bodily injury caused by accidental means." In reaching this result, the court explicitly rejected the suggestion that the introduction of typhoid bacilli by the insured into his system was an accident, and that the resulting infectious disease injured his body, and thereby triggered coverage. *Id.* The Court noted that "[i]n the ordinary sense of the words," it did not "regard the contracting of an infectious disease . . . as the suffering of bodily injuries from accidental means." *Id.* Instead, such an occurrence, said the court, is more properly viewed as "the contracting of a disease." *Id.*[13]

In the face of this authority, Plaintiff's claim that there are no cases which "support [the] theory that a community-acquired bacterial infection is not an accidental injury" is way off the mark. Equally unpersuasive is Plaintiffs' argument that New York courts have "consistently held that an 'accidental injury' is one that was unintentional and unexpected," and that such an injury need not be the result of violence. (Pl.'s Mem. 4–5.) Without invoking weighty metaphysical concepts about what it means for an event to be accidental,[14] it does not advance the ball in this case to fight over whether Decedent's pneumonia was "unintentional" and "unexpected." Presumably, nobody expects or intends to contract any disease, including pneumonia. *See* Scales, *supra*, at 240 ("Beyond intentional suicide, when is death ever expected?"); *cf. Richardson*, 176

covered loss due to "external, violent, and accidental" injury, whereas the Policy here does not exclude all accidental injury unless caused by such means. (Pl.'s Mem. 6.) The effort fails because the point of *Bacon* is that a disease contracted through normal means is a disease, and not an injury.

13. Other courts have cited *Connelly* with approval. *See, e.g., USX Corp. v. Liberty Mut. Ins. Co.*, 444 F.3d 192, 199–200 (3d Cir.2006) (citing *Connelly* to distinguish "bodily injury by accident" from "bodily injury by disease" in asbestos context); *Burns v. Employers' Liab. Assurance Corp. Ltd.*, 134 Ohio St. 222, 16 N.E.2d 316, 320, 321 (1938) (citing *Connelly* and observing that "[w]hen we hear that someone has suffered an accident, we conclude that he has suffered, more or less, some external violent bodily injury"); *Loudon v.*

*H.W. Shaull & Sons*, 140 Pa.Super. 106, 13 A.2d 129, 133 (1940) (citing *Connelly* and noting an "employee" who merely contracts "a cold, influenza, tuberculosis, pneumonia, or any other disease by normally and naturally breathing in germs the presence of which is traceable to the conditions or surroundings where he worked," would not make his or her employer liable under Pennsylvania Workers' Compensation Law).

14. Philosophical discussions of what constitutes an accident can invite endless discussion. *See* Scales, *supra*, at 198–99 (noting that lightning strikes are natural, if unpleasant, phenomena, and that a "traveler's poisoning is not an accident to the tsetse swarm," but yet both have traditionally been covered by accident policies).

N.Y.S. at 655 ("If it can ever be said that there is involved an accident or an occurrence in the sudden invasion of the human body by bacteria, then in substantially all infectious diseases there is a precedent accident, and therefore an accidental injury."). Moreover, it is common ground that violence is not required to trigger coverage under an accident policy like the one at issue in this case. Indeed, the courts have found that an accidental injury can occur (and cause a fatal infection and trigger coverage) when a pimple is punctured, *see Lewis*, 120 N.E. 56, or when an infection enters the body through a small cut, *Connelly*, 147 N.E. at 367. Rather, what is required is some accidental injury to the insured.

Nor is the Court persuaded by the cases Plaintiff cites. First, Plaintiff offers a quote from the Supreme Court's decision in *Landress v. Phoenix Mut. Life Ins. Co.*, 291 U.S. 491, 54 S.Ct. 461, 78 L.Ed. 934 (1934). In its decision, which held that death by sunstroke was not covered by an accident policy, the *Landress* Court commented: "We do not intimate that injuries resulting from as impalpable a cause as the inadvertent introduction into the body of noxious germs may not be deemed to be effected by external accidental means." *Id.* at 496, 54 S.Ct. 461 (citing *Jensma v. Sun Life Assurance Co.*, 64 F.2d 457 (9th Cir.1933), and *Western Commercial Travelers' Ass'n v. Smith*, 85 F. 401 (8th Cir. 1898)). This quote from *Landress* does not support Plaintiff at all, as the two cases cited immediately after the quote involved infections or illnesses resulting from injuries. *See Jensma*, 64 F.2d at 461 (holding that injection for hay fever caused infection that caused insured's death, thus requiring coverage); *Western Commercial*, 85 F. at 405 (holding that death from blood poisoning that was caused by abrasion of the skin of a toe by a new shoe was covered by accident policy). Both, in other words, involved some injury in addition to, and in fact that was the cause of, the fatal infections. Indeed, in *Western Commercial*, the court noted that death caused by a disease that itself was not the result of any bodily injury, such as in the "case of malignant pustule," would not entitle the insured to accident coverage. 85 F. at 404 (citing *Bacon*, 123 N.Y. at 304, 25 N.E. 399).

Plaintiff also cites *Middleton v. Coxsackie Corr. Facility*, 38 N.Y.2d 130, 379 N.Y.S.2d 3, 341 N.E.2d 527 (1975), in which a correctional officer developed tuberculosis and eventually die d, after being exposed to a tubercular inmate who coughed persistently in his presence. *Id.*, 379 N.Y.S.2d 3, 341 N.E.2d at 528. The Court found that, under the New York Workers' Compensation Law, plaintiff's tuberculosis constituted a " 'disease or infection as may naturally and unavoidably result [from an] ... accidental injur[y].' " *Id.*, 379 N.Y.S.2d 3, 341 N.E.2d at 530 (quoting N.Y. Workers' Comp. Law § 2(7)). The court noted that "[n]umerous awards," given out by the Workers' Compensation Board, "based on diseases found to be the result of industrial accidents, including those caused by germs, have been sustained." *Id.* These include, "malignant tertian malaria caused by sting of certain specie of mosquito," "cranio-orbital mucormycosis [contracted] after inhalation of dust with musty odor," the "mumps [contracted] by [a] teacher after exposure to pupils during epidemic," "poliomyelitis [contracted] after sneeze in face by fellow nurse suffering from said disease," and "scarlet fever [contracted] by matron in direct contact with children suffering therefrom." *Id.*, 379 N.Y.S.2d 3, 341 N.E.2d at 530–31 (citations omitted). Thus, New York courts have essentially read the requirement that infections must result from "accidental injuries" out of the

Workers' Compensation law.[15] Instead, New York courts appear to decide whether an infection is covered by Workers' Compensation by focusing on other factors, such as the conditions of employment. *See Johannesen v. N.Y. City Dept. of Hous. Pres. & Dev.*, 84 N.Y.2d 129, 615 N.Y.S.2d 336, 638 N.E.2d 981, 984 (1994) (finding that plaintiff's asthma, caused by exposure to second-hand smoke, is covered by Workers' Compensation, explaining that "accidental injury" is a "term of art," and that "[t]he seriously adverse environmental conditions to which claimant was subjected as part of her job and workplace reasonably qualify as an unusual hazard").

In fulfilling its duty to "predict how the state's highest court would" rule on a question of state law, a federal court must "give the fullest weight to pronouncements of the state's highest court." *See Runner v. New York Stock Exchange, Inc.*, 568 F.3d 383, 386 (2d Cir.2009). Here, there is good reason to believe that the Court of Appeals would not import its approach to administering Workers' Compensation into its interpretation of accident insurance contracts. Indeed, the Court of Appeals itself has stressed that Workers' Compensation is a unique area of law calling for extremely broad interpretation of the statute's text, and deference to the Workers' Compensation Board:

> The Workers' Compensation Law was enacted for socioeconomic remediation purposes as a means of protecting workers and their dependents from want in case of injury on the job. An employee is entitled to receive compensation on a "no-fault" basis for all injuries "arising out of and in the course of the employment." Under Workers' Compensation Law § 2(7), "injury" and "personal injury" means only "accidental injuries aris-

ing out of and in the course of employment and such disease or infection as may naturally and unavoidably result therefrom." To effectuate the statutory objectives, Workers' Compensation Law § 21(1) creates a presumption that injuries "arising out of and in the course of employment" are compensable ... as "accidents." Moreover, given the remedial nature of the Workers' Compensation Law, the Court has construed the statute and given the Board, as "trier of the facts," a very wide latitude in determining whether a disabling condition is an accident.

*Johannesen*, 615 N.Y.S.2d 336, 638 N.E.2d at 983 (citations and internal quotation marks omitted). Notably, the Court of Appeals in *Johannesen* cited *Middleton* as an example of it giving the Workers' Compensation Board "very wide latitude." *Id.* Moreover, Plaintiff has not directed the Court to any case, nor has the Court found one, in which the Court of Appeals has retreated from its holdings in *Connelly* and *Bacon*, and in fact, the principles for which they stand have been recited with approval. *See Michaels*, 628 N.Y.S.2d 253, 651 N.E.2d at 1274. Accordingly, if asked to interpret the Policy here, this Court believes that the Court of Appeals would be driven by the Policy's plain meaning and purpose, not by the meaning it has ascribed to similar terms in the very different context of Workers' Compensation.

Finally, Plaintiff cites *Iannucci v. John Hancock Mutual Life Ins. Co.*, 83 Misc.2d 733, 373 N.Y.S.2d 256 (Sup.Ct.1975), which held that a policy-holder was covered by an accident policy where he died of serum hepatitis, which he contracted from blood administered during a spinal operation. This case is easily distinguishable from the

---

**15.** Indeed, the Workers' Compensation Board found that Decedent's death in this case was covered by that Act. (Pl.'s Mem.. 6.)

case at hand because a blood transfusion is at least arguably an "abnormal or traumatic" channel of infection, whereas inhalation is a far more "normal channel[ ] of entry." *Connelly*, 147 N.E. at 367.

What happened to Decedent is indeed tragic. In the end, however, Plaintiff is unable to cite any persuasive authority that a person who is a victim of a fatal infectious disease that is contracted through normal means brought about by everyday life has suffered an accidental injury, as that phrase has been applied to accidental insurance disputes. Put another way, and in Justice Cardozo's terms, Plaintiff cannot claim that the average person would say that what happened to Decedent was an "accidental injury," or that the Policy here was drafted to cover pneumonia contracted from the ambient air. *See Burns v. Employers' Liab. Assurance Corp. Ltd.*, 134 Ohio St. 222, 16 N.E.2d 316, 320 (1938) ("Certainly, a disease such as pneumonia or typhoid fever is not thought of in everyday language as a bodily injury."); *Loudon v. H.W. Shaull & Sons*, 140 Pa.Super. 106, 13 A.2d 129, 130 (1940) ("In common parlance, typhoid fever is considered a disease, not an accident, unless the illness is attributable to some antecedent occurrence of an unusual and unexpected character which may fairly be termed an accident."). Instead, at most, Plaintiff is left with the argument that Decedent's passing was the result of a commonly-spread infection that she did

not want, that is, it was unintended and, frankly, as sudden as it was tragic. "But most mishaps, including most diseases, are accidentally sustained in the sense that they are brought about by a combination of unhappy circumstances." *Tucker*, 51 N.Y.S.2d at 414. However, "it is not against accidents in the cosmic sense of the word that accident insurance is intended to afford protection." *Id.* at 415; *see also* Scales, *supra*, at 288–89 ("[I]f a tuberculosis sufferer communicates it to a grocery clerk, the fact that the clerk might have been spared had she worn a biohazard suit does not invest an otherwise natural process with the human dimension required to impart an accidental character."). Such coverage is available in traditional life insurance policies (and, apparently, under New York's Workers' Compensation Laws), but not under the Policy at issue here.

### 2. Do Any of the Exclusions Bar Recovery Under the Policy?

The Court shall now consider whether Plaintiff is additionally barred from recovery because of two exclusions under the Policy. The two exclusions provide that benefits will not be paid if death "results from" seven circumstances, including "bodily or mental infirmity, illness, or disease," or "infection, other than infection occurring simultaneously with, and as a result of, the accidental injury." Because the Court finds that the second exclusion applies here, it will not address the first exclusion.[16]

---

**16.** Plaintiff argues that this exclusion does not apply here because he alleges that Decedent suffered from no pre-existing condition. (Pl.'s Mem. 12–14.) Of course, the Court accepts this allegation, explicitly made in the Complaint, to be true for purposes of deciding Defendant's Motion to Dismiss. The Court also notes, without deciding the issue, that courts have permitted recovery, under accidental death policies, where either there was no evidence of a pre-existing condition, *see, e.g, Bernstein v. American Home Assur. Co.*, 59 A.D.2d 615, 395 N.Y.S.2d 532, 533 (1977)

(upholding jury finding that a "bleb" on decedent's eye was not a pre-existing illness but merely a "weakness or frailty in the eye which made it more susceptible to infection by harmful bacteria"); *Amend v. Equitable Life Assur. Co. of U.S.*, 73 Misc.2d 402, 342 N.Y.S.2d 284, 287 (N.Y.City Civ.Ct.1972) (upholding jury finding that decedent did not have an "active disorder" but merely a "static," "frail condition") (citations and internal quotation marks omitted), or where the accident triggered the pre-existing condition that

■ To disclaim coverage because of a policy exclusion, "an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." *Continental Cas. Co. v. Rapid–American Corp.*, 80 N.Y.2d 640, 593 N.Y.S.2d 966, 609 N.E.2d 506, 512 (1993); *see also McLean v. Continental Cas. Co.*, 951 F.Supp. 494, 497 (S.D.N.Y.1997). "Under New York insurance law, 'the [b]urden, a heavy one, is on the insurer, and [i]f the language of the policy is doubtful or uncertain in its meaning, any ambiguity must be resolved in favor of the insured and against the insurer.'" *Parks Real Estate*, 472 F.3d at 42 (quoting *Pepsico, Inc. v. Winterthur Int'l Am. Ins. Co.*, 13 A.D.3d 599, 788 N.Y.S.2d 142, 144 (2004)).

■ Defendant has met this burden because there is no "reasonable interpretation" of the exclusion that allows recovery under the Policy for a death caused by an infection which results from contracting a community-spread bacterial pathogen. The Policy excludes coverage for "infections," except for a small category of infections that remain: infections that result from "accidental *injuries*." Thus, by the clear and unmistakable language of the Policy, in order for an infection to be covered, the cause of the infection must itself be an "injury," i.e., an event that is itself harmful, separate and apart from the infection that it causes, or the infection itself.[17]

■ For instance, suppose that a policy-holder accidentally cuts himself with a chainsaw, the cut becomes infected, and the policy-holder dies. The policy-holder's beneficiary would be entitled to recovery because the cut was not only "accidental" but was itself an "injury," since cuts are harmful regardless of whether they lead to infections. *See Simpson*, 121 F.2d at 684 (finding pneumonia caused by injury from hypodermic injection); *Connelly*, 147 N.E. at 367 (finding infection spread through a small cut); *McQueen v. Prudential Ins. Co. of Am.*, 143 Misc. 682, 256 N.Y.S. 906, 907 (App.Div.1932) (holding that recovery under accident policy was possible where there was evidence that fatal germs infected deceased through bloody nose suffered during a "friendly boxing match"); *Bellanca v. Travelers Ins. Co.*, 160 Misc. 795, 290 N.Y.S. 664 (Sup.Ct.1936) (holding that recovery under accident insurance policy was proper where knee injury weakened decedent's defenses against infection). But here, according to the Complaint, Decedent's in

then caused the death of an insured, *see, e.g., Silverstein v. Metropolitan Life Ins. Co.*, 254 N.Y. 81, 171 N.E. 914 (1930) (accident caused pre-existing ulcer to rupture and kill the decedent). The Court offers no opinion about whether, based on these cases, the absence of any pre-existing condition bars recovery here.

17. The Ninth Circuit recently espoused a similar interpretation of the term "injury." *See Dumontier v. Schlumberger Tech. Corp.*, 543 F.3d 567 (9th Cir.2008). There, the plaintiffs claimed that their exposure to radiation caused "sub-cellular damage" which increased their chances of developing cancer later in life. *Id.* at 570. The question was whether this damage constituted a "bodily injury" under the Price–Anderson Act, 42 U.S.C. § 2010. The court concluded that this damage "does not establish that there is or will be pain or interference with bodily functions, and thus isn't an injury within the meaning of the" Price–Anderson Act. The court explained that "not every alteration of the body is an injury. Thinking causes synapses to fire and the brain to experience tiny electric shocks; fear stimulates the production of chemicals associated with the fight-or-flight response. All life is change, but all change is not injurious." *Id.* at 570–71; *see also June v. Union Carbide Corp.*, 577 F.3d 1234, 1249 (10th Cir.2009) ("DNA damage and cell death, which creates only a possibility of clinical disease, does not constitute a 'bodily injury' under the Price–Anderson Act.") (internal quotation marks omitted).

fection was caused by a community-spread pathogen. (Compl. ¶ 21.) The Complaint does not allege that this pathogen was contracted in a manner that itself was harmful or in any way atypical.[18] In fact, Plaintiff does not allege that Decedent suffered any accidental harm whatsoever, besides harm stemming from the infection. Accordingly, the Court must conclude that Decedent's infection, even if it was somehow an "injury" itself, was not *caused* by an "injury."

This reading of the "infections clause" is not only required by the text, it is also necessary to fulfill the clause's evident purpose. Insurance policies, like other contracts, "are interpreted in the light of all the circumstances, and if the principal purpose of the parties is ascertainable it is given great weight." Restatement (Second) of Contracts § 202(1); *see also Sunrise Mall Assocs. v. Import Alley of Sunrise Mall, Inc.*, 211 A.D.2d 711, 621 N.Y.S.2d 662, 662 (1995) ("In construing a contract, the document must be read as a whole to determine the parties' purpose and intent, giving a practical interpretation to the language employed so that the parties' reasonable expectations are realized."). When the infections clause is read in the context of the entire Policy, its

purpose becomes clear. The Policy is styled as an "accidental death benefit" and contains a bold disclaimer stating that it "PROVIDES ACCIDENT ONLY INSURANCE AND DOES NOT PAY BENEFITS FOR LOSS FROM SICKNESS." (*Id.*) It defines "death by accidental injury" as death that results "from accidental drowning or from an accidental injury which was unintended, unexpected, and unforseen." (*Id.*) The Policy then specifically excludes a number of causes of death, including "infection, other than infection occurring simultaneously with, and as a result of, the accidental injury." (*Id.*)

The Policy as a whole, then, appears aimed at covering only "accidents" in the traditional, common sense of the word. Indeed, the Policy states that it is limited to deaths caused by "an *accidental drowning* or [other] accidental injur[ies]" (Def.'s Ex. A (emphasis added)), thus conjuring images of accidents in the traditional "mishap" sense. *See Connelly*, 147 N.E. at 367 (noting that "our mental attitude is different" when an infection is the result of a traumatic or abnormal event, such as a cut or lesion, and that in such cases "we think and speak of what has happened as something catastrophic or extraordinary, a mis-

18. Though not alleged in the Complaint, the Court is aware, both from the Infectious Disease Report of Dr. William M. Lipsky and the decision of the Workers' Compensation Board in Decedent's case, that Plaintiff's theory is that Decedent was exposed to the Group A streptococcus bacterial pathogen via an airborne, community-spread transmission while working at an elementary school. The Court does not rely on the Lipsky report in deciding this motion, but properly can take judicial notice of the Workers' Compensation Board's decision that is to the same effect. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir.2006) (finding that "docket sheets," in a related federal case involving one of the parties, "are public records of which the court could take judicial notice"); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d

Cir.1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes."). Thus, the Court is willing to assume the plausibility of Plaintiff's theory. The Court also is aware of Defendant's deep skepticism of this theory, but finds it irrelevant to this motion because, even assuming Plaintiff could substantiate his theory, there is nothing atypical, abnormal, or catastrophic about school children spreading communicable germs, *see* Ctr. for Disease Control and Prevention, *Stopping Germs at Home, Work and School*, Feb. 1, 2004, www.cdc.gov/germstopper/home_work_school.htm, and nothing in Plaintiff's Complaint alleges otherwise.

hap or an accident"); *see also* William N. Eskridge, Jr., et al., *Legislation* 823 (3d Ed. 2001) (noting that the canon *"edjusdem generis"* requires that "general words [be] construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words"). The Policy then goes out of its way, for example, to distinguish "accidents" in this traditional sense, from "sickness[es]" which, though often "unintended, unexpected, and unforeseen," are not normally described as "accidents." *Cf. Bacon,* 25 N.E. at 400 ("[T]he insured died from a disease.... He did not die from any accident....").

Infections, being a type of "sickness," would appear to be a strong candidate for categorical exclusion. There is one complication, however. Suppose a policy holder sustains an accidental injury that *results in* an infection. In the chainsaw example described above, where the person cuts himself with a chainsaw, develops an infection, and ultimately perishes. It would be a perversion of the Policy to bar recovery from this chainsaw accident simply because death was technically caused by infection instead of, say, loss of blood. This is the Serbonian Bog of which Justice Cardozo warned. *See Landress,* 291 U.S. at 499–500, 54 S.Ct. 461 (Cardozo, J., dissenting). Thus, the Policy provides an exception to the rule barring coverage for death by infection, by permitting recovery for infections that result from a separate and district "accidental injury," such as a chainsaw cut. And, as noted above, courts in New York, and elsewhere, routinely grant recovery to beneficiaries in such circumstances.

This reading of the "infections" clause is also necessary to give that clause effect. New York contract law dictates that a "court should not adopt an interpretation which would leave any provision without force and effect." *Sunrise Mall Assocs.,* 621 N.Y.S.2d at 662. Plaintiff apparently believes that the mere contraction of an infection-causing pathogen constitutes an "injury." But, if this is correct, then it is be hard to imagine an infection not caused by an "accidental injury," since one neither contracts pathogens from nowhere, nor presumably does so intentionally. *See USX Corp. v. Liberty Mut. Ins. Co.,* 444 F.3d 192, 200 (3d Cir.2006) (rejecting view that inadvertent inhalation of asbestos was a "bodily injury by accident," because "nearly every microscopic injury resulting from indeterminate, generalized exposure to an agent would be considered a 'bodily injury by accident' because no one intends to be injured"); *Burns,* 16 N.E.2d at 321 ("We do not think of one suffering from typhoid fever ... as the result of an accident or injury."). And, even if one did intentionally contract a harmful pathogen, the resulting infection would already be unambiguously excluded by the Policy's requirement that an accidental injury must be "unintended." (*Id.*)[19] Put another way, if anything that causes an infection is an "injury," then the infections clause merely limits coverage to "infections caused by accidents." But if an infection was not caused by an accident, it would not be an "accidental injury" at all.[20]

**19.** Plaintiff could contend that his interpretation would not cover all unintentionally-acquired infections, but only *uncommon* ones. After all, to be "accidental" an injury must not only be "unintentional," but also "unexpected" and "unforeseen." (Def.'s Ex. A.) While this interpretation of "accidental" would limit the infections covered by the Policy, it would not provide an independent role for the infections exclusionary clause, since the definition of "death by accidental injury" already limits coverage to injuries which are "unintended, unexpected, and unforeseen."

**20.** Tellingly, Plaintiff does not provide his own interpretation of the infections clause, nor does he mention a single infection that the infections clause would exclude under his interpretation of "injury." *See McLean,* 951 F.Supp. at 498 ("[P]laintiff does not offer an-

Plaintiff seeks to avoid this unavoidable interpretation of the infections clause by noting that "if the insurer intended to exclude bacterial infection resulting from airborne transmission into the lungs, the policy could have been crafted," as other policies have been, to exclude all infections except those caused by "an accidental cut or wound." (Compl. ¶¶ 44–45.) Plaintiff is correct that the Policy could have been drafted differently. That is, the Policy could have been written a way that might have made this an easier case. But that is true in almost every contract case. The question is whether the Policy as written is "ambiguous"; not whether it is "imperfect." A policy is "ambiguous" where it is subject to more than one "reasonable interpretation." *Continental Casualty Co.*, 593 N.Y.S.2d 966, 609 N.E.2d at 512. Here, Plaintiff has failed to provide a reasonable interpretation of the infections clause that would allow him to recover.

Finally, Plaintiff's choice of cases to support his position is misguided. *See, e.g., Gardner v. N.Y. Med. Coll.*, 280 A.D. 844, 113 N.Y.S.2d 394, 394 (1952) ("Appellants argue that sneezing into claimant's face could not be found to be an 'accident' because people normally sneeze. It seems to us, however, that as to persons nearby who receive the effect of such a sneeze it fits within the classic definition of an 'accident'...."). *Gardner* and the other cases cited by Plaintiff suggest, at the very most, that were there no infections exclusionary clause, Plaintiff would recover because an unintentionally obtained infection constitutes an "accidental injury." These cases therefore do not suggest that contracting the infection-causing pathogen is itself an

"accidental *injury*." Accordingly, they do not help in the interpretation and application of the exclusionary clause at issue here. In any event, these cases merely address whether a Workers' Compensation determination should be upheld and, therefore, are distinguishable for the reasons noted above.

No more helpful is *Iannucci* in which, as noted above, a policy-holder died of serum hepatitis which he contracted from blood administered during a spinal operation. 373 N.Y.S.2d at 258–59. The court found that the hepatitis was a "disease or infection resulting directly from an accidental injury." *Id.* at 258. But the *Iannucci* court did not explicitly consider whether the unintentional injection of contaminated blood constituted an "accidental *injury*" Rather, the court focused exclusively on "whether [decedent's] death was 'accidental,'" and never stated that contracting an infection-causing pathogen through normal means itself constituted an "injury." *Id.* at 260. At any rate, *Iannucci* was a trial court case and has only been cited once in its thirty-five year existence, and that was for an unrelated point. *Cf. Conn. State Fed'n of Teachers v. Bd. of Ed. Members*, 538 F.2d 471, 485 (2d Cir.1976) ("[T]wo unreported decisions by trial courts of general jurisdictions are not binding on us.").

Because the Court finds that, taking all of Plaintiff's allegations to be true, Defendant properly denied coverage under the Policy, the Court finds that Defendant breached neither the contract nor any fiduciary duty it supposedly owed to Plaintiff. Therefore, the Court grants Defendant's motion to dismiss.[21]

other reasonable interpretation of the meaning of the word 'infection.' She merely argues that it is ambiguous. This, without more, is not sufficient....").

**21.** Because the Court has accepted Plaintiff's allegations as true, including Plaintiff's theory

of how Decedent contracted pneumonia, and otherwise has not relied on materials outside the Complaint that it should not have in deciding the motion to dismiss, the Court finds it unnecessary to convert Defendant's motion to one for summary judgment.

### III.  Conclusion

For the reasons stated herein, Defendant's motion to dismiss is granted.  Defendant's alternative motion for summary judgment is denied as moot, and Plaintiff's cross-motion for summary judgment is denied.  The Clerk is respectfully directed to remove the pending motions (Dkt. Nos. 17, 19), enter judgment for Defendant, and close this case.

SO ORDERED.